**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0095n.06

Case No. 14-3262

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jan 30, 2015*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ZIYAYA MTOLA, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, SUTTON, and STRANCH, Circuit Judges.

**SILER**, Circuit Judge. A jury convicted Ziyaya Mtola of two counts of failure to depart, in violation of 8 U.S.C. § 1253(a)(1)(C) and two counts of assaulting, resisting or impeding a federal officer, in violation of 18 U.S.C. § 111(a)(1). Mtola appeals his judgment of conviction and sentence. We **AFFIRM**.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A. Factual Background**

Mtola, a native of South Africa, entered the United States from England on a J-1 nonimmigrant visa in 2001. He was authorized to stay for four months. Mtola did not leave when required and remains in the United States today.

After marrying a United States citizen, Mtola filed forms I-485 and I-130 to remain in the United States. In 2010 and again in 2011, the United States Citizenship and Immigration Services ("USCIS") sent Mtola notices of intent to deny his application based on the lack of evidence to substantiate that the marriage was genuine. The USCIS initiated removal proceedings. Mtola failed to appear at his removal hearing, and the immigration judge ("IJ") entered a removal order.

Mtola filed a motion *pro se* to reopen his case, which was denied in 2012. In February 2013, Immigration and Customs Enforcement ("ICE") agents arrested Mtola pursuant to the removal order. ICE agents transported Mtola to the Geauga County jail in Chardon, Ohio, where he was scheduled to remain until his removal. Mtola then hired an attorney to file a second motion to reopen.

On March 29, 2013, ICE agents initiated Mtola's first deportation effort. Mtola was scheduled to fly unaccompanied to Johannesburg, South Africa, by way of Atlanta, Georgia. ICE arranged for two agents to escort Mtola to the airport and ensure that he was on the flight when it took off.

Agent Robert Feick met with Mtola at the jail on the morning of March 29, 2013, and he informed Mtola that he was going to be removed that day. Mtola told Agent Feick about his pending motion and that he did not believe he should be removed. Agent Feick explained that he was ordered to transport Mtola to the Cleveland suboffice and that he would look into the situation. After speaking with Agent Roby, the case officer responsible for Mtola's removal, Agent Feick informed Mtola that his pending motion did not entitle him to stay in the United States. Upon arriving at the Cleveland suboffice, Mtola was presented with paperwork, which

indicated he would be removed to South Africa that day. Mtola was kept in a holding cell at the suboffice.

Mtola asked to contact his attorney. Agents Feick and Saher Abouhmoud allowed Mtola to make three phone calls to his attorney's office, and each time he spoke with someone. Mtola's attorney informed him that the second motion was still pending. By that time, Agents Feick and Abouhmoud determined that they had to leave for the airport or Mtola would miss his flight. Mtola refused to get out of his chair so the ICE agents stood him up and placed him in restraints for transport. While escorting Mtola from the holding cell toward the transport vehicle, Mtola began shouting and became aggressive. Mtola refused to cooperate or to walk to the transport vehicle. The agents continued to inform Mtola that they needed to hurry so that he would not miss his flight. Mtola said he did not care if he missed his flight, he did not want to go and Agent Abouhmoud should just shoot him. Based on his conduct and comments, Agents Feick and Abouhmoud decided Mtola was too aggressive and hostile for non-supervised transport. As a result, they returned Mtola to a holding cell in the Cleveland suboffice.

Prior to the second attempted removal, scheduled for April 22, 2013, several events occurred. Agent Roby met with Mtola to discuss the first deportation effort and to explain to him that ICE was required to remove him pursuant to the IJ's order even though his motion to reopen remained pending. Agent Roby provided Mtola with paper work, which he refused to sign. He also advised Mtola that the next attempted removal would be by escort. Agents Shawn Mohr and Michael Pinson were assigned to escort Mtola to South Africa. After Agent Roby met with Mtola and prior to the second removal attempt, Mtola's second motion to reopen was denied.

On April 22, 2013, Agents Mohr and Pinson met Mtola in the booking area of the jail. Two other ICE agents, George Roberts and Seth Bereznay, were present to assist with escorting Mtola from the booking area to the transport van and to the airport if necessary. In the booking area, Agents Mohr and Pinson explained to Mtola that his motion to reopen was denied, and they explained to him the consequences if he refused to leave the United States. Mtola was initially calm, but later became agitated. Agents Mohr and Pinson spent over ten minutes explaining to Mtola what would happen, but he refused to listen and stated that he would not go. Agent Roberts testified that he "approached Mr. Mtola from behind and asked him to place his hands behind his back. He refused. And then we started to struggle." Then, the four ICE agents and several officers from the jail tried to place Mtola in handcuffs. They told Mtola to remain calm, but he continued to resist. The agents put Mtola on the ground in order to gain control and to place him in the handcuffs. Once handcuffed, the agents placed Mtola in leg restraints.

After restraining Mtola, Agents Roberts and Pinson carried Mtola from the booking area to the transport van because he refused to walk. Following another struggle, they were able to put him into the van. Agent Mohr contacted Mtola's attorney with the hope that he could calm Mtola down. Agent Mohr told Mtola that his attorney was on the phone, and Mohr held the speaker phone up to the van window. Mtola refused to speak with his attorney and kept screaming. Mtola broke free from the restraints and the seatbelt, and he opened the door and tried to flee from the van. While lying on his back, Mtola started kicking at the officers, and Agent Roberts testified that Mtola kicked him several times in the forearm. After the officers were able to force him back into the van, Agents Mohr and Pinson entered the van. Agent Mohr put the vehicle in reverse, but Mtola began kicking the ceiling of the van and banging his head against the metal grate of the door before the van departed the sally port. Agents Mohr and

Pinson called off the deportation effort because they concluded Mtola was too aggressive to fly on an aircraft.

The agents then advised Mtola that he was not going to be removed that day. Because he was uncooperative and would not walk on his own, the agents physically removed Mtola from the van. Mtola tensed up and resisted while numerous agents attempted to remove Mtola's handcuffs and shackles in order to place him in a restraint chair. At that time, the officers noticed that Agent Pinson had a laceration on his hand, which was bleeding. Agent Pinson received medical attention at the scene, and he also was treated at a local hospital later that day. Prior to speaking to Mtola in the booking area, Agent Pinson did not have the laceration.

## B. Procedural History

Mtola was tried before a jury on two counts of failure to depart, in violation of 8 U.S.C. § 1253(a)(1)(C) (Counts 1 and 2) and two counts of assaulting, resisting or impeding a federal officer, in violation of 18 U.S.C. § 111(a)(1) (Counts 3 and 4). Counts 1 and 2 were based on the events that occurred on March 29, 2013, and April 22, 2013, respectively. Count 3 charged Mtola of "physical contact with and physically lung[ing] at, str[i]k[ing], and repeatedly kick[ing]" Agent Roberts during the second deportation effort. Count 4 was based upon Mtola's actions toward Agent Pinson during the second deportation effort and charged him with "aggressively resisting attempts to [be] handcuff[ed], mak[ing] physical contact with [Pinson] and caus[ing] a laceration to [Pinson's] left index finger."

The Government filed a pre-trial motion to exclude evidence of Mtola's upbringing and unpleasant experiences with South African authorities. The district court excluded this evidence, finding that even if the proposed testimony was relevant, it was barred under Rule 403 because it was substantially outweighed by the prejudice that would accompany the testimony. The

Government also filed a pre-trial motion to exclude exhibits Mtola presented to the IJ in support of his second motion to reopen, arguing that the exhibits were irrelevant under Rule 401 and impermissible character evidence under Rule 404(a). The exhibits included Mtola's resume, certificates, church documents, a marriage license, tax returns and several letters. The district court excluded the exhibits, finding that the background evidence was impermissible and non-pertinent character evidence under Rule 404(a) and did not fall within the *res gestae* exception.

At trial, Mtola did not challenge the validity of the removal order or his immigration status. Instead, at the close of the Government's case and again at the close of all evidence, Mtola moved for a judgment of acquittal on Counts 3 and 4. He argued that there was no credible evidence that any officer was assaulted. The district court denied both of Mtola's motions for judgment of acquittal.

The jury found Mtola guilty on all four counts. Although the jury found Mtola guilty of assaulting and resisting Agents Roberts and Pinson, they did not find him guilty of the aggravating factor of physical contact with those agents, which was necessary to subject Mtola to a longer sentence. The presentence report calculated a guidelines range of twelve to eighteen months, with a maximum of twelve months for Counts 3 and 4. Ultimately, the court sentenced Mtola "for a term of 36 months on each of Counts 1 and 2 and a term of 12 months on Counts 3 and 4, all to be served concurrently." Mtola filed a timely notice of appeal.

## II.    DISCUSSION

### A. Evidentiary Rulings

Generally, we review challenges to the district court's evidentiary rulings under the deferential abuse-of-discretion standard. *United States v. Fisher*, 648 F.3d 442, 449 (6th Cir. 2011). Mtola challenges the district court's evidentiary rulings with respect to testimony of his

past experiences in South Africa and exhibits related to his immigration proceedings. Specifically, he argues that the district court erred in excluding this evidence because it was admissible under the motive exception of Rule 404(b) and/or as background or *res gestae* evidence.

Because challenges to Rule 404(b) evidence and background or *res gestae* evidence "often serve as alternative grounds for admission, we will consider them together." *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013); *see United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). Under Rule 404(b)(1), "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such "other acts" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" under Rule 404(b)(2). "Background or *res gestae* evidence is an exception to Rule 404(b)." *Adams*, 722 F.3d at 810 (citing *United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012)). Background evidence "consists of those other acts that are inextricably intertwined with the charged offense." *Id.* (quoting *Hardy*, 228 F.3d at 748).

In criminal cases, Rule 404(b)(1) affords protections to defendants because it prohibits the Government from offering evidence of "a crime, wrong, or other act . . . to show that on a particular occasion the [defendant] acted in accordance with the character." Rule 404(b)(2) provides exceptions to Rule 404(b)(1); these exceptions permit the Government to offer evidence of "a crime, wrong, or other act" in limited circumstances—to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The other-acts evidence proffered in this case—*i.e.*, testimony about Mtola's experiences in South Africa and Mtola's motions to reopen and their supporting documents—was offered by

the defendant. None of that evidence is relevant to any material fact. Accordingly, Mtola's argument that his proffered evidence is admissible under Rule 404(b)(2) and/or the *res gestae* exception is without merit.

### B. Sufficiency of the Evidence

"In reviewing a challenge to the sufficiency of the evidence, we must not 'weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury.'" *United States v. Farrow*, 198 F.3d 179, 186 (6th Cir. 1999) (quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999)). Rather, "we determine merely whether, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, a rational trier of fact could find the elements of the crime beyond a reasonable doubt." *Id.* (quoting *Davis*, 177 F.3d at 558).

### 1. Waiver

Mtola moved for a judgment of acquittal on Counts 3 and 4 at the close of the Government's case and again at the close of the evidence. The Government argues that Mtola's initial Rule 29 motion pertained specifically to the assault charges and that he "failed to challenge the sufficiency of the evidence supporting any of the other means of violating [18 U.S.C. § 111(a)] charged in the indictment, such as resisting the agents, interfering with the agents, impeding the agents in their performance of duties, and the like." According to the Government, because Mtola moved for an acquittal on the specific issue of assault, he waived any challenge to the sufficiency of the evidence as to whether he forcibly resisted, opposed, impeded, intimidated or interfered with the agents. We disagree.

Mtola made a general Rule 29 motion and then discussed the sufficiency of the evidence with respect to the assault charge. The district court denied Mtola's motion and stated that "[t]here is clearly sufficient evidence for the case to go forward on these two counts to be determined by the jury." The court then briefly summarized the evidence and stated that there is an open issue whether Mtola knowingly "resisted, opposed, impeded, or interfered with these officers." *See United States v. Love*, 553 F. App'x 548, 553 (6th Cir. 2014) (concluding that a Rule 29 motion with a general statement followed by specifics, coupled with the court's finding that there was "sufficient evidence to sustain a conviction for the defendant on each of the counts," is a general Rule 29 motion).

### 2. The Merits

The relevant statutory elements of 18 U.S.C. § 111(a) are as follows:

(a) In general. Whoever—

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties;

> …

> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both . . . .

Consequently, "Section 111(a)(1) contains four distinct elements; the government must show that [Mtola]: (1) forcibly (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with (3) a federal officer (4) in the performance of his duties." *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001). "The element of force necessary for a conviction under this statute may be shown by 'such a threat or display of physical aggression toward the officer as to inspire

fear of pain, bodily harm, or death.'" *United States v. Chambers*, 195 F.3d 274, 277 (6th Cir. 1999) (quoting *United States v. Street*, 66 F.3d 969, 977 (8th Cir. 1995)).

Mtola claims that the district court erred in denying his Rule 29 motion because the Government presented insufficient evidence to sustain his conviction under 18 U.S.C. § 111(a)(1). Specifically, he contends that the evidence presented at trial was insufficient to permit a rational trier of fact to conclude that he forcibly resisted Agents Roberts and Pinson.

As a threshold matter, during oral argument, Mtola claimed that there was insufficient evidence to sustain his conviction due to inconsistent verdicts. Because the jury found Mtola not guilty of physical contact with Agents Mohr and Pinson, Mtola claims that the jury's finding that he forcibly resisted the Agents is inconsistent and therefore not supported by the evidence. Even assuming the verdicts are inconsistent, it does not affect the outcome in this case. *See United States v. Chilingirian*, 280 F.3d 704, 710 (6th Cir. 2002) (recognizing that "[t]he Supreme Court has held that 'a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count'" (quoting *United States v. Powell*, 469 U.S. 57, 58 (1984))).

As discussed above, Agents Mohr and Pinson spent over ten minutes in the booking room explaining to Mtola what would happen if he refused to comply with the deportation order. Mtola refused to listen and stated that he would not go.

Subsequently, Agents Roberts and Pinson asked Mtola to place his hands on top of his head so they could put him in handcuffs. Agent Roberts "approached Mr. Mtola from behind and asked him to place his hands behind his back." According to Agent Pinson, Mtola "refused and tensed up to where we were not able to put any restraints on him." Agent Roberts indicated that a struggle ensued as he tried to place Mtola in handcuffs, and Agent Pinson testified that

"Mtola started pushing and shoving us." Multiple officers helped bring Mtola to the ground. Agent Roberts "secured [Mtola's] feet so that he couldn't kick another officer." Ultimately, it took five to six officers to place Mtola in the restraints.[1] Agent Roberts testified that Mtola's shoes came off during this struggle. Despite the fact that Mtola did not have shoelaces on, this is evidence of forcible resistance. After placing the handcuffs and leg shackles on Mtola, the officers carried him to the transport vehicle because he refused to walk. Once in the vehicle and while lying on his back, Mtola started kicking at the officers, and Agent Roberts testified that Mtola kicked him several times in the forearm.

Based on the evidence, we conclude that a rational trier of fact could have found that Mtola acted with forcible resistance toward Agents Roberts and Pinson.

## C. Mtola's Sentence

At sentencing, the district court stated that the guideline range is "12 to 18 months for Counts 1 and 2. Counts 3 and 4 are 12 months. The statutory provisions for Counts 1 and 2 are zero to ten years and Counts 3 and 4 zero to one year for this particular offense." The court sentenced Mtola to thirty-six months for Count 1, thirty-six months for Count 2 and a total of twelve months for Counts 3 and 4. The court ordered that the sentence be served concurrently—for a total term of thirty-six months of incarceration.

We "review a district court's sentencing determination, 'under a deferential abuse-of-discretion standard,' for reasonableness." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). The reasonableness review includes a procedural component and a substantive component. *Id.*

---

[1] A video confirms that a struggle ensued in the booking room.

For a sentence to be procedurally reasonable, the district court "must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence – including an explanation for any variance from the guidelines range." *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008) (citing *Gall*, 552 U.S. at 51). After imposing the sentence, the court must "ask the parties whether they have any objections to the sentence . . . that have not previously been raised." *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) (quoting *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004)). If the defendant fails to object, we review procedural challenges to sentences for plain error. *Id.*

If there is no procedural defect, then we will review the sentence for substantive reasonableness. *Grossman*, 513 F.3d at 595 (citing *Gall*, 552 U.S. at 51). "A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Jeter*, 721 F.3d 746, 757 (6th Cir. 2013) (quoting *United States v. Shaw*, 707 F.3d 666, 674 (6th Cir. 2013)). Moreover, "[a] sentence falling within the Guidelines range is presumptively reasonable; one falling outside the Guidelines range carries no such presumption." *Id.* (citing *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009)). Rather, we apply "a form of proportionality review to sentences outside the Guidelines range, so that the greater the variance from the range, the more compelling the justification for variance must be." *Herrera-Zuniga*, 571 F.3d at 590 (citations and internal quotation marks omitted).

### 1. Procedural Reasonableness Review

Mtola concedes that he did not raise his procedural challenge before the district court, even after being given an opportunity to do so. Consequently, we review for plain error.

Mtola's challenge to the procedural reasonableness of his sentence fails under plain-error review because the district court: (1) properly calculated the guideline range; (2) treated the guideline range as advisory; (3) considered the statutory factors, pursuant to 18 U.S.C. § 3553(a); and (4) explained the variance from the guidelines. First, Mtola agreed that the court accurately calculated the guidelines range during the sentencing hearing. Second, the district court treated the guidelines as advisory by sentencing Mtola outside of the guideline range. Third, while Mtola attempts to argue that the district court did not consider the § 3553(a) factors, the sentencing transcript reveals otherwise, and any inquiry into the quality of the court's evaluation of the factors is considered as part of the substantive reasonableness review. Fourth, the court provided several reasons in support of an upward variance.

Accordingly, Mtola's sentence was procedurally reasonable. The district court did not err, let alone commit plain error.

### 2. Substantive Reasonableness Review

Next we address Mtola's argument that his thirty-six month sentence, which exceeded the advisory guidelines range, is substantively unreasonable. Mtola makes two arguments in support of his position. First, he argues that the district court failed to give adequate weight to his history and background. Second, he argues that the district court failed to justify the upward variance.

The district court considered Mtola's "history and characteristics," a relevant § 3553(a) factor. It considered Mtola's "prior record, violence, physical abuse, diminished capacity,

employment, age, substance abuse and family ties." The court noted that Mtola has no prior convictions, no history of violence and no evidence of suffering from any abuse.

Importantly, the court recognized Mtola's claims of a difficult childhood in South Africa:

[Mtola] appears to – or at least claims to have a difficult childhood as a result of conditions in South Africa. It is difficult to verify whether indeed the representations he has made are accurate or not. He claims, his family moved several times in order to avoid what Mr. Mtola claims is harassment by law enforcement.

The fact that the court found Mtola's evidence about his upbringing in South Africa unpersuasive does not mean that it failed to consider the evidence. Rather, it means the court afforded little weight to that evidence.

The district court acknowledged that Mtola was a high school graduate with a degree in business management and another degree as a nursing assistant. The court discussed Mtola's history of steady employment during his time in the United States. It also considered the fact that Mtola did not report using any illegal substances. All of these factors about Mtola's history and background were considered by the court when it sentenced him to thirty-six months of incarceration.

In sum, Mtola's argument is that the district court erred in not giving his history and background the weight that he believed it deserved. *See United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006) (recognizing that balancing the § 3553(a) factors "is simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence"). This argument is without merit.

Mtola also claims that his sentence is substantively unreasonable because the court failed to justify the upward variance. The sentencing transcript does not support Mtola's argument. As

Case No. 14-3262
*United States of America v. Mtola*

outlined below, the court explained the need for an upward variance in the context of the § 3553(a) factors.

The court first noted that Mtola expressed no remorse—either in writing or during the trial. It based the upward variance in part on the fact that it afforded little weight to Mtola's testimony. Specifically, the court stated that:

> [A]lthough there is no enhancement based on his testimony, I have no doubt in my mind that his testimony here before the Court was patently false. He knew all too well that he exhausted all of his efforts before the immigration court. It was simply a ruse and a falsehood to try and do everything in his power to delay his removal. The officers gave him every opportunity to contact his attorney. There was no testimony by any attorney here in open court about the fact that he had some viable appeal remaining.
>
> Certainly by his second – certainly by the April 22 date by which the officers tried to remove him, he knew full well that there was no valid basis for remaining – any reason to remain in this country.

Despite this, as the court noted, Mtola continued to take any and all steps to remain in the United States. The court's discussion of Mtola's continued resistance to depart indicates that it took into account Mtola's lack of respect for the law, *see* 18 U.S.C. § 3553(a)(2)(A), when it imposed a sentence above the guidelines range.

Most importantly, the court justified the upward variance based on its view that Mtola would not be deterred by a sentence within the guidelines range. It indicated that Mtola had resisted removal not once but twice. The court stated that it "suspect[s] that [Mtola] will continue, despite his conviction, to fail to be removed from this country and do everything in his power to resist. Nothing he has said or done gives me any – any likelihood that indeed he will cooperate." Although Mtola claims that this is speculation, the record supports the trial court's concern. The sentencing factors require the court to evaluate the likelihood that Mtola will re-

offend. *See* 18 U.S.C. § 3553(a)(2)(B). The court concluded that "[Mtola] is an individual . . . who, again, certainly will not be deterred by a guideline sentence. And perhaps a lengthier term of incarceration will meet the purposes of the sentencing statute, just punishment and adequate deterrence, to deter him from resisting further removal." The court based its upward variance in part on its determination that Mtola will continue to resist deportation and will not be deterred by a sentence within the guidelines range.

In sum, the district court concluded that the upward variance was necessary based on Mtola's continued resistance to removal and increased risk of recidivism. Based on the foregoing, we cannot say that the variance constitutes an abuse of discretion.

**AFFIRMED.**