RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 15-4095

GEORGE RAFIDI,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:14-cr-00386—Patricia A. Gaughan, District Judge.

Argued: April 22, 2016

Decided and Filed: July 11, 2016

Before: MOORE, GIBBONS, and DAVIS, Circuit Judges.[*]

_____

**COUNSEL**

**ARGUED:** Mark H. Allenbaugh, LAW OFFICES OF MARK H. ALLENBAUGH, Wickliffe, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Mark H. Allenbaugh, LAW OFFICES OF MARK H. ALLENBAUGH, Wickliffe, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

MOORE, J., delivered the opinion of the court in which GIBBONS, J., joined, and DAVIS, J., joined in part and in the judgment. DAVIS, J. (pg. 15), delivered a separate opinion concurring in parts I, II.B–D, and III of the majority opinion and in the result.

_____

[*]The Honorable Andre M. Davis, Senior Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.   A jury convicted Defendant-Appellant George Rafidi of forcibly assaulting a federal law-enforcement officer, in violation of 18 U.S.C. § 111(a)(1) and (b), and using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).   On appeal from his conviction and sentence, Rafidi contends that a violation of § 111 cannot constitute a "crime of violence" for purposes of § 924(c).   Rafidi also argues that the government violated its *Brady* obligations, that the district court erred in failing to investigate a juror sleeping during his trial, and that his sentence violates the Eighth Amendment. For the reasons discussed below, we **AFFIRM** Rafidi's conviction and sentence.

## I.  BACKGROUND

On October 22, 2014, a grand jury indicted Rafidi for one count of forcibly assaulting, resisting, opposing, impeding, and interfering with a federal law-enforcement officer, in violation of 18 U.S.C. § 111(a)(1) and (b), and one count of using and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).   R. 6 (Indictment at 1–2) (Page ID #11–12).   Rafidi proceeded to a two-day jury trial on both charges.

## A.  Trial Proceedings

According to testimony presented at trial, on October 8, 2014, a team of approximately twelve investigative agents—including agents from the United States Department of Agriculture ("USDA") and the United States Department of Homeland Security ("DHS")—visited Rafidi's home in Warren, Ohio, in order to execute a search warrant.   R. 30 (Trial Tr. at 124–25, 129, 141) (Page ID #310–11, 315, 327).   Upon arriving, USDA Special Agent Robert Springer "pounded" on Rafidi's door and announced the officers' presence.   *Id.* at 131 (Page ID #317). Springer could see inside through a glass window, and he observed Rafidi "pick[] up a silver handgun."   *Id.* at 132–33 (Page ID #318–19).   Springer yelled at Rafidi to "put the gun down," and Rafidi replied, "'[Y]ou mother fuckers.'"   *Id.* at 134 (Page ID #320).   According to Springer, "the door swung open," and Rafidi "was holding a silver handgun in his hand . . . pointed right at

[Springer]." *Id.* at 132–33 (Page ID #318–19). Detective Chris Bordonaro of the Lordstown Police Department, another member of the law-enforcement team, testified that he was familiar with Rafidi from the local community and that he "started to yell 'George, it is Chris . . . . from the Police Department'" while Rafidi was inside. *Id.* at 218 (Page ID #404). According to Bordonaro, "within just seconds the door came flying open" and "in slow motion I just seen a silver revolver with a hand . . . coming out of like the door," with the gun pointing "straight out the door." *Id.* at 219 (Page ID #405). Bordonaro "observed the gun like in a kicking type motion, and then [Rafidi] started to turn with his body to the left and the firearm to where" Bordonaro was standing. *Id.* at 219–20 (Page ID #405–06). Bordonaro fired his weapon four times as he retreated, but none of the bullets struck Rafidi. *Id.* at 220, 229 (Page ID #406, 415). At some point, Rafidi went back into his home and emerged without his weapon "with his hands up," and he was taken into custody. *Id.* at 136 (Page ID #322).

Special Agent Daniel Boerner of the Ohio Bureau of Criminal Investigation ("BCI"), tasked with investigating the officer-involved shooting, testified at trial about his investigation of Rafidi's home following the incident. *Id.* at 242–48 (Page ID #428–34). On cross-examination, Boerner was asked by defense counsel if he "ha[d] the opportunity to take any measurements of the porch on which the shooting took place?" *Id.* at 249 (Page ID #435). Boerner answered: "We conducted Ferroscans [sic] or 360 degree scans. Those would have those measurements, but, no." *Id.*

Rafidi's counsel requested a side bar immediately following cross-examination of Boerner, expressing to the district court: "Your Honor, I am a little concerned about Juror No. 1. He has been asleep pretty much the whole day. Is there anything you might be able to say to him? I am very concerned about that." *Id.* at 252 (Page ID #438). The district court responded, "I have not seen that at all, folks, have you?" *Id.* at 252–53 (Page ID #438–39). Both prosecutors responded that they had not noticed a juror sleeping. *Id.* at 253 (Page ID #439). Rafidi's other attorney answered: "I saw him sleeping once, which is why when I was closer to the jury to increase my volume in an effort to wake him up." *Id.* The district court noted that it had not witnessed the juror sleeping, but it indicated that "[h]opefully—and maybe I just didn't

notice it—but hopefully, the side bar and telling them to stand and stretch hopefully will do the trick because there is nothing much more I can do." *Id.*

The defense called a private investigator—Michael Antonoff—to testify. R. 31 (Trial Tr. at 288) (Page ID #474). Antonoff stated that he went to Rafidi's residence and "took pictures of the interior-exterior of the residence and measured different parts of the residence." *Id.* at 289 (Page ID #475). Antonoff also took a "video of the interior of George Rafidi's residence," which was played for the jury. *Id.* at 293 (Page ID #479).

Rafidi also testified. *Id.* at 295 (Page ID #481). According to Rafidi, he had taken pain medication the afternoon of the incident, fallen asleep, and "was horribly awoken by someone bashing on [his] front door." *Id.* at 305–06 (Page ID #491–92). Rafidi "was afraid for [his] life" because his home had been broken into on an earlier occasion, so he grabbed his gun for safety. *Id.* at 306 (Page ID #492). Rafidi testified that he could not hear anyone yelling at him, nor could he see out of the front window. *Id.* at 308–09 (Page ID #494–95). Rafidi demonstrated to the jury how he had held the gun barrel pointed toward the ground and explained that he had not crossed the threshold of his front door. *Id.* at 311–12 (Page ID #497–98). Rafidi testified that he saw police cars when he opened the door and then, after a "[s]plit second," he was fired upon; Rafidi stated that he then "closed the door and put the gun back" before returning outside. *Id.* at 312–14 (Page ID #498–500).

On April 2, 2015, the jury found Rafidi guilty of both counts charged in the indictment. R. 25 (Verdict at 1–2) (Page ID #120–21).

## B. Rule 33 Motion for New Trial

Rafidi moved for a new trial on the basis of newly discovered evidence on June 25, 2015. R. 32 (Def. Mot. for New Trial at 1) (Page ID #579). First, Rafidi argued that, during cross-examination of Agent Boerner, Rafidi "learned of the existence of the[] 360 degree scans" of Rafidi's residence. *Id.* at 7 (Page ID #585). Rafidi's motion explained that a FARO scan "is a relatively new tool of law enforcement used to digitize an entire crime scene into a 360 degree three-dimensional map." *Id.* at 8 (Page ID #586). Rafidi stated that, the day after the jury returned its verdict, he sent the prosecution a request pursuant to *Brady v. Maryland*, 373 U.S. 83

(1963), "for discovery on the '3-D forensic laser mapping of the crime scene' mentioned by Agent Boerner on cross-examination." *Id.* at 10–11 (Page ID #588–89) (quoting R. 32-4 (Allenbaugh Email) (Page ID #614)). Rafidi submitted to the district court an animation that he had created using the 360-degree scan received from the government; Rafidi's animation depicted "three scenarios involving the trajectories of the four bullets fired by Detective Bordonaro at Mr. Rafidi." *Id.* at 16 (Page ID #594). According to Rafidi, these animations demonstrate that Rafidi could not have pointed his gun at the officers "without having been shot," and thus the scans were material. *Id.* at 18 (Page ID #596).

Second, Rafidi argued that a new trial was warranted based on the newly discovered evidence that a juror was sleeping during trial. *Id.* at 20 (Page ID #598). Rafidi attached affidavits of several individuals who stated that Juror No. 1 was sleeping "for a considerable portion, if not most, of the trial." *Id.* at 21 (Page ID #599); *see generally* R.32-10 (Declarations) (Page ID #660). Rafidi contended that the district court failed to "investigate the juror's misconduct when undersigned counsel brought it to the [c]ourt's attention" and that a new trial was warranted given the misconduct. R. 32 (Def. Mot. for New Trial at 22–23) (Page ID #600–01).

The district court denied Rafidi's motion on September 2, 2015. R. 47 (09/02/15 D. Ct. Order at 1) (Page ID #796). The district court agreed with the government that both the FARO scan and the information relating to the sleeping juror "were available to defendant prior to and during trial." *Id.* at 1–2 (Page ID #796–97). The district court also stated in a footnote that "the Court does not find that the FARO scan is *Brady* material because it was not favorable to defendant given that it was merely a 3-D depiction of defendant's house and evidence of the layout and dimensions of the house was presented at trial." *Id.* at 3 n.1 (Page ID #798).

## C.  Rule 29 Motion for Judgment of Acquittal

During trial, Rafidi moved under Rule 29 for a judgment of acquittal, which the district court denied. *See* R. 30 (Trial Tr. at 282–83) (Page ID #468–69). On September 22, 2015, Rafidi filed a motion for reconsideration of the district court's denial of his Rule 29 motion, arguing that "a violation of § 111 categorically fails to qualify as a 'crime of violence'" sufficient

to support his conviction under § 924(c)(1)(A)(ii).  R. 49 (Def. Mot. for Reconsideration at 9) (Page ID #822).  The district court denied this motion on September 23, 2015, in a non-document order.

**D.  Sentencing**

Rafidi was sentenced on October 2, 2015.  R. 61 (Sentencing Tr. at 1) (Page ID #961). The district court agreed with Rafidi that several Guidelines enhancements recommended by the U.S. Probation Office were not warranted and accordingly calculated a Guidelines range of 10 to 16 months of imprisonment, in addition to the mandatory 84-month consecutive sentence for violation of § 924(c).  *Id.* at 7–11 (Page ID #967–71).  The district court disagreed with Rafidi that the application of § 924(c) violated the Eighth Amendment, noting that "[w]hen I accept the facts that the jury found beyond a reasonable doubt, this Court cannot possibly say that the statutory required sentence of 84 months is grossly disproportionate to the crime."  *Id.* at 13 (Page ID #973).  The district court sentenced Rafidi to 10 months of imprisonment on Count 1 followed by 84 months of imprisonment on Count 2, to be served consecutively, for a total of 94 months of imprisonment.  *Id.* at 21 (Page ID #981).

Final judgment was entered on October 2, 2015.  R. 60 (Judgment) (Page ID #955). Rafidi timely appealed.  R. 62 (Notice of Appeal) (Page ID #990).

## II.  DISCUSSION

Rafidi raises four issues[1] on appeal.  First, Rafidi contends that a violation of § 111 is not categorically a "crime of violence" for purposes of § 924(c).  Second, Rafidi argues that the government violated *Brady* by failing to disclose the existence of the FARO scan of Rafidi's home.  Third, Rafidi contends that the district court erred in failing to investigate allegations that a juror slept during trial.  Finally, Rafidi asserts that the application of § 924(c)(1)(A)(ii) to his

---

[1]Rafidi also argued in his opening brief that the government failed to prove a necessary element of a violation of § 111—namely, that "Rafidi engaged in *physical contact* with federal law enforcement agents." Appellant Br. at 17.  In his reply brief, however, Rafidi "concede[d], as the [g]overnment argues, that '[t]he part of the statute under which Rafidi was convicted contains no physical contact or intent to commit another crime element.'"  Reply Br. at 4 (quoting Appellee Br. at 36).  Rafidi is not entitled to relief on this basis.

offense conduct violates the Eighth Amendment.  We consider each of these issues below in turn.

**A.  A Violation of § 111(b) Constitutes a "Crime of Violence" For Purposes of § 924(c)**

Rafidi first argues that the district court erred in denying his motion for a judgment of acquittal because a violation of § 111 is not categorically a "crime of violence" for purposes of establishing a violation of § 924(c).  Appellant Br. at 21.  "[W]e review de novo a district court's determination that a prior conviction is a crime of violence."  *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013).  We conclude that a violation of § 111(b)—the portion of the statute under which Rafidi was convicted—constitutes a "crime of violence" under § 924(c), and the district court accordingly did not err in denying Rafidi's motion.

Rafidi was indicted and found guilty of violating 18 U.S.C. § 924(c)(1)(A)(ii), which provides for a sentence "of imprisonment of not less than 7 years" if a person brandishes a firearm "during and in relation to any crime of violence or drug trafficking crime."  Section 924(c)(3) defines a "crime of violence" for purposes of the subsection as:

an offense that is a felony and –

(A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  The government argues that § 111 constitutes a "crime of violence" under the "elements clause" of § 924(c)(3)(A).[2]  Appellee Br. at 32.

We use a "categorical approach" to determine whether an offense constitutes a "crime of violence" for purposes of § 924(c)(3).  *See Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *see also United States v. Fuertes*, 805 F.3d 485, 497–99 (4th Cir. 2015); *United States v. Serafin*,

---

[2]The Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015), held that the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague.  Our Circuit recently held that *Johnson* does not invalidate the "residual clause" of § 924(c)(3)(B).  *United States v. Taylor*, 814 F.3d 340, 379 (6th Cir. 2016).  Nonetheless, as discussed above, because the government relies on the elements clause, we do not consider whether § 111 falls within the residual clause of § 924(c)(3).

562 F.3d 1105, 1107–08 (10th Cir. 2009); *United States v. Piccolo*, 441 F.3d 1084, 1086–87 (9th Cir. 2006).  Under the categorical approach, a court "focuses on the statutory definition of the offense, rather than the manner in which an offender may have violated the statute in a particular circumstance."  *Denson*, 728 F.3d at 607.  "Courts use 'a variant of this method—labeled (not very inventively) the "modified categorical approach"—when a prior conviction is for violating a so-called "divisible statute,"' which 'sets out one or more elements of the offense in the alternative.'"  *Id.* (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013)).  "If [the underlying] statute could be violated in a way that would constitute a crime of violence and in a way that would not, we look beyond the statutory language and examine" a limited set of documents "to determine whether the conviction necessarily depended on the commission of a crime of violence."  *United States v. Rede-Mendez*, 680 F.3d 552, 556 (6th Cir. 2012).

We thus turn to 18 U.S.C. § 111, a "rather convoluted statute."  *United States v. Gagnon*, 553 F.3d 1021, 1026 (6th Cir. 2009).  Section 111 provides as follows:

(a)  In general.—Whoever—

 (1)  forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated [as a federal officer] while engaged in or on account of the performance of official duties; or

 (2)  forcibly assaults or intimidates any person who formerly served [as a federal officer] on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b)  Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon . . . or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111.  This statute sets forth "three separate crimes whose elements must all be submitted to a jury."  *Gagnon*, 553 F.3d at 1024.  Two crimes are established in § 111(a): a misdemeanor ("cases involving 'only simple assault'") and a felony ("all other cases").  *Id.*

(quoting 18 U.S.C. § 111(a)). We explained the difference between these two crimes in *Gagnon*. A misdemeanor violation of § 111(a) occurs when a defendant forcibly commits "*any* of the prohibited actions listed in § 111(a)(1) and § 111(a)(2), while 'all other cases' covers the commission of these same violations *plus* the intent to commit a felony or resulting physical contact from forcible (and thus intentional) action." *Id.* at 1027. The third crime—an "aggravated felony"—is committed by violating § 111(b), which prohibits "violations of § 111 that either involve a deadly or dangerous weapon or result in bodily injury." *Id.* at 1024.

Rafidi was charged with and found guilty of violating § 111(b). *See* R. 6 (Indictment at 1) (Page ID #11); R. 31 (Trial Tr. at 371) (Page ID #557). In order to establish a violation of § 111(b), as discussed above, the government must establish a violation of § 111(a) in addition to the use of a deadly or dangerous weapon or the "inflict[ion] [of] bodily injury." *Gagnon*, 553 F.3d at 1024. "Section 111(a)(1) contains four distinct elements; the government must show that the defendant: (1) forcibly (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with (3) a federal officer (4) in the performance of his duties." *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001). We thus consider whether § 111(b)—and not § 111(a), by itself—"has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *See* § 924(c)(3)(A). More specifically, we must determine whether § 111(b) has as an element the use or attempted use of "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*") (interpreting the "use of physical force" clause under the ACCA); *see also Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) (construing the term "crime of violence" in 18 U.S.C. § 16—essentially identical to § 924(c)(3)—as "suggest[ing] a category of violent, active crimes"). We hold that it does.

Significantly, a defendant must act "forcibly" to violate § 111. *See Kimes*, 246 F.3d at 807. The element of force may be satisfied in two ways, each of which is sufficient to categorize § 111(b) as a "crime of violence." First, this element "may be satisfied by proof of actual physical contact." *United States v. Street*, 66 F.3d 969, 977 (8th Cir. 1995); *see also United States v. Chambers*, 195 F.3d 274, 277 (6th Cir. 1999) (relying on *Street*'s definition of "forcibly"). Rafidi contends that this element does not require the "use of force" as interpreted

by *Johnson I* because "*violent* force" is not required; rather, Rafidi argues, the element may be established through *any* degree of physical contact.  Appellant Br. at 22–23; *see United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014) (holding that § 111(a) is not a "crime of violence" for purposes of U.S.S.G. § 2L1.2 because "a defendant may be convicted of violating section 111 if he or she uses *any force whatsoever* against a federal officer" (internal quotation marks omitted)).  But although this might prevent § 111(*a*) from being a categorical "crime of violence"—an issue that we do not decide—a violation of § 111(*b*) involving a deadly weapon is meaningfully different than a violation of § 111(a), by itself.  As we explained in *United States v. Rede-Mendez*, 680 F.3d at 558, "[n]ot every crime becomes a crime of violence when committed with a deadly weapon."  But if a statute "ha[s] as an element some degree of, or the threat of, physical force in the more general sense," then "the use of a deadly weapon may transform" this more general "force into the necessary 'violent force'" to constitute a "crime of violence" within the meaning of *Johnson I.  Id.*  Under this reasoning, if a defendant commits a violation of § 111 through intentionally causing physical contact with the federal officer—even if this physical contact is not in itself "capable of causing physical pain or injury," *Johnson I*, 559 U.S. at 140—§ 111(*b*)'s additional required element of using a deadly weapon during this encounter would elevate this lower degree of physical force into "violent force" sufficient to establish § 111(b) as a "crime of violence."  *See Rede-Mendez,* 680 F.3d at 558.

Second, in the absence of physical contact, "[t]he element of force necessary for a conviction under [§ 111] may be shown by 'such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.'"  *Chambers*, 195 F.3d at 277 (internal quotation marks omitted); *see also United States v. Mtola*, 598 F. App'x 416, 421 (6th Cir. 2015).  Thus, even if the defendant did not come into physical contact with the officers at all, the government still must establish the "forcible" element, and "a threat or display of physical aggression" sufficient "to inspire fear of pain, bodily harm, or death" constitutes the "threatened use of physical force" within the meaning of *Johnson I.  Chambers*, 195 F.3d at 277. Indeed, the district court instructed the jury here that, in order to find Rafidi guilty of violating § 111(a)(1) and (b), the jury needed to find "that the Defendant forcibly assaulted" the officers, with "forcible assault" defined as "an intentional threat or attempt to cause serious bodily injury . . . includ[ing] any intentional display of force that would cause a reasonable person to expect

immediate and serious bodily harm or death regardless of whether the act is carried out or the person is injured." R. 31 (Trial Tr. at 371–72) (Page ID #557–58). Rafidi's conviction for § 111(b) constitutes a "crime of violence" within the meaning of § 924(c)(3), and the district court did not err in denying Rafidi's motion for a judgment of acquittal.

**B. The District Court Did Not Err in Denying Rafidi's Rule 33 Motion Based on the Government's Alleged *Brady* Violation**

Next, Rafidi contends that the district court erred in denying his Rule 33 motion for a new trial because newly discovered evidence demonstrated that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963). Appellant Br. at 26–27. This Court "review[s] the denial of a motion for new trial based on *Brady* violations or newly discovered evidence under an abuse of discretion standard." *United States v. Jones*, 399 F.3d 640, 647 (6th Cir. 2005). "However, the district court's determination as to the existence of a *Brady* violation is reviewed de novo." *United States v. Graham*, 484 F.3d 413, 416–17 (6th Cir. 2007).

The district court did not err in denying Rafidi a new trial. A *Brady* violation requires three elements: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "th[e] evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Here, Rafidi argues that the prosecution violated *Brady* by failing to disclose the existence of the 360-degree FARO scan of Rafidi's residence. Rafidi claims that the FARO scan is exculpatory because—as demonstrated by several animations that he was able to construct using the data—the scan would have helped "support his position that he did not point his gun at anyone" and would have allowed him "to effectively cross-examine government witnesses with respect to the critical sequence of events." Appellant Br. at 32. We disagree. Even with the assumption that the FARO scan constitutes *Brady* material, the existence of the scan was disclosed to Rafidi prior to trial. The government "sent a copy of BCI's investigative report" to defense counsel on November 26, 2014. Appellee Br. at 41; *see* R. 36-2 (Toepfer Letter) (Page ID #692); R. 36-3 (FedEx Shipment Receipt) (Page ID #693). Page eight of Boerner's nine-page investigative report states that "[a] CD of the FARO scan was placed in the case file." R. 36-5 (Investigative Report Excerpt) (Page ID #695). This disclosure

sufficiently informed Rafidi as to the existence and availability of the scan.  And, as the district court recognized, Rafidi "has not claimed that the government provided too much discovery or" otherwise wrongfully concealed the existence of the FARO scan in the discovery that it sent.  R. 47 (09/02/15 D. Ct. Order at 3–4) (Page ID #798–99); *see United States v. Warshak*, 631 F.3d 266, 297–98 (6th Cir. 2010).

Rafidi also argues that the prosecution's failure to *use* the FARO scan to create an animation or "analysis of bullet trajectories . . . in-and-of-itself constitutes material evidence that would have a tendency to exculpate" Rafidi.  Appellant Br. at 33.  As the government argues, however, it provided Rafidi with BCI's investigative case file to evaluate, and whether the government "fail[ed] to take certain investigative steps" in using the scan is a subject for cross-examination.  Appellee Br. at 42.  Indeed, Boerner testified at trial about taking the FARO scan measurements; Rafidi could have cross-examined Boerner about the government's use of the measurements, but Rafidi did not ask any follow-up questions.  R. 30 (Trial Tr. at 249) (Page ID #435).  In sum, Rafidi has not established that the prosecution violated its *Brady* obligations.

## C.  The District Court Did Not Err in Failing to Investigate Juror Misconduct

Rafidi next argues that the district court erred in failing to investigate a juror's sleeping during trial.  Appellant Br. at 37.  "When an allegation of juror misconduct arises, a district court is required to investigate the claim in order to determine whether the misconduct tainted the trial."  *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008).  Generally, "[t]he trial judge's decision regarding the measures necessary to make this determination is reviewed for abuse of discretion."  *United States v. Lloyd*, 462 F.3d 510, 518 (6th Cir. 2006).  Here, however, after bringing the sleeping juror to the district court's attention during trial, Rafidi did not object to the district court's proposed solution, did not ask the district court to take any further action, and did not raise the issue again until his Rule 33 motion for a new trial based on newly discovered evidence.  Accordingly, we review the district court's decision for plain error.  *See United States v. Cook*, 550 F. App'x 265, 270 (6th Cir. 2014) (reviewing a claim that a "district court failed to take any curative action when jurors fell asleep during the trial" for plain error where "counsel did not make an objection below").

The district court did not commit plain error here. "[A] juror who sleeps through much of the trial testimony cannot be expected to perform his duties." *United States v. Warner*, 690 F.2d 545, 555 (6th Cir. 1982). At the same time, we have recognized that "the trial judge is in the best position to determine the nature and extent of alleged jury misconduct." *United States v. Shackleford*, 777 F.2d 1141, 1145 (6th Cir. 1985). Rafidi's counsel raised the issue to the district court's attention by asking "Is there anything you might be able to say to him?" R. 30 (Trial Tr. at 252) (Page ID #438). The district court asked both defense counsel and the prosecution whether they had witnessed a juror sleeping and remarked that it had told the jurors to "stand and stretch." *Id.* at 253 (Page ID #439). Rafidi's counsel did not request that the district court take any further action following this exchange, such as requesting that the juror be removed or that the juror be questioned about sleeping. Rafidi's counsel did not object to the district court's proposed solution nor did counsel move for a mistrial. Because defense counsel did not request any further action and did not raise the issue again during trial, we cannot say that the district court plainly erred in addressing defense counsel's sleeping-juror allegation.

## D. Rafidi's Sentence Does Not Violate the Eighth Amendment

Lastly, Rafidi argues that the application of 18 U.S.C. § 924(c)(1)(A)'s sentencing enhancement to his § 111 charge violates the Eighth Amendment. Appellant Br. at 41. We review constitutional challenges to a sentence de novo. *United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009).

Under the Eighth Amendment, "there is no requirement of strict proportionality" between crime and sentence; rather, under the "narrow proportionality principle," "the eighth amendment is offended only by an extreme disparity." *Id.* (internal quotation marks omitted); *see Harmelin v. Michigan*, 501 U.S. 957, 996–1009 (1991) (Kennedy, J., concurring). According to Rafidi, his sentence "is grossly disproportionate to the severity of his momentary offense conduct" and is thus unconstitutional. Appellant Br. at 43. We disagree. Section 924(c)(1)(A)(ii) imposes a minimum sentence of seven years, to be served consecutively, if a firearm is brandished "during and in relation to any crime of violence or drug trafficking crime." The district court sentenced Rafidi to 84 months of imprisonment on the § 924(c) count. R. 61 (Sentencing Tr. at 21) (Page ID #981). "In general, Eighth Amendment jurisprudence grants 'substantial deference' to the

legislatures who determine the types and limits of punishments." *United States v. Moore*, 643 F.3d 451, 456 (6th Cir. 2011) (quoting *Harmelin*, 501 U.S. at 999). As the government addresses, "[a] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *Id.* at 455 (alteration in original) (internal quotation marks omitted); *see* Appellee Br. at 54. Here, the jury found Rafidi guilty of § 924(c) for brandishing a firearm at federal officers; Congress chose to impose a mandatory minimum sentence of seven years of imprisonment for such a crime, and Rafidi was sentenced to this term. Rafidi's sentence "is not grossly disproportionate" to the crime for which he was convicted within the meaning of the Eighth Amendment. *See United States v. Clark*, 634 F.3d 874, 877–78 (6th Cir. 2011).

## III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

**CONCURRING IN PART AND IN THE JUDGMENT**

---

ANDRE M. DAVIS, Senior Circuit Judge, concurring in part and in the judgment. I am happy to concur in parts I, II.B–D, and III of Judge Moore's thorough opinion for the panel. As for part II.A, which examines the question of whether the (alternative) requirement of 18 U.S.C. § 111(b), that a dangerous weapon be used in committing an offense under § 111(a), categorically renders a violation of the former a crime of violence under the force clause of § 924(c)(3)(A), I remain *dubitante*. I cannot say with assurance that the judicial gloss placed on the statutory terms of § 111 by the reasoning in cases such as *United States v. Chambers*, 195 F.3d 274 (6th Cir. 1999), and, by analogy, *United States v. Rede-Mendez*, 680 F.3d 552 (6th Cir. 2012), is enough to hold that the statute means what its text does not say.

Put differently, it is unclear to me that the use of a dangerous weapon in "forcibly," but not "violently," resisting arrest by an FBI agent, for example, categorically elevates the kind of non-violent force sufficient to satisfy § 111(a) into "violent force" within the meaning of the term as recognized in Supreme Court precedent. *See Johnson v. United States*, 559 U.S. 133, 140 (2010). Indeed, the jury charge in this very case seems to bear out the quite expansive ambit of the kind of "force" that will sustain a conviction under § 111(b). *See ante* 13 (quoting instruction that jury could convict upon its finding that Rafidi's conduct "includ[ed] any intentional display of force that would cause a reasonable person to expect immediate and serious bodily harm or death regardless of whether the act is carried out or the person is injured" (citation omitted)). Thus, under this approach, pointing a firearm (loaded or not) at a federal law-enforcement officer is the kind of "display of force" that would constitute "violent force." And yet, as the majority opinion notes, "[n]ot every crime becomes a crime of violence when committed with a deadly weapon." *Ante* 12 (quoting *Rede-Mendez*, 680 F.3d at 558).

My doubts aside, on the basis of binding Circuit precedent, *United States v. Taylor*, 814 F.3d 340, 379 (6th Cir. 2016), I concur in the panel's conclusion that a violation of § 111(b) is an appropriate predicate, but under the "residual clause" of § 924(c)(3)(B).