NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0269n.06

No. 07-6021

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Apr 30, 2010**

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| STEVEN PAUL FAST, | ) EASTERN DISTRICT OF KENTUCKY |
| | ) |
| Defendant-Appellant. | ) |
| | ) |
| | ) |

Before: GIBBONS, GRIFFIN, Circuit Judges; and DOWD, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Stephen Fast challenges

the sufficiency of evidence supporting his conviction for carrying a firearm during a drug trafficking

crime under 18 U.S.C. § 924(c)(1). Fast also challenges the admission of certain physical and

opinion evidence.

For the following reasons, we affirm Fast's conviction.

I.

On June 12, 2006, members of the Kentucky State Police Drug Task Force performed an

undercover drug-buy operation targeting Fast in Knott County, Kentucky. Based on information

obtained from an informant, undercover Detective Russell Dishner arranged to buy drugs from Fast

---

[*]The Honorable David D. Dowd, United States District Judge for the Northern District of
Ohio, sitting by designation.

1

in a gas station parking lot. Fast traveled from his home in Angola, Indiana, to the Knott County gas station and parked his pickup truck in the station's lot.

Detective Dishner, wearing an audio recording device and visually monitored by two other detectives, approached the vehicle and confirmed that Fast was the driver. Fast then handed Dishner a piece of paper that allegedly indicated the price of methodone and oxycontin pills and a debt that a confidential witness owed to him. The pair negotiated the sale of the narcotics. Fast then asked Dishner to get into the truck, pulled a white bag out of the center console of the truck, and showed Dishner the contents of the bag which included pill bottles and loose methadone pills. Dishner walked around to the passenger side of the vehicle, gave the other detectives a prearranged signal that he had seen the narcotics, and sat in the passenger seat. Dishner then counted out the money that he and Fast had agreed upon.

Police officers thereafter arrived on the scene and arrested Fast. The officers recovered eleven oxycodone pills and a piece of paper with hand-written notations on the floorboard, and a bag with two oxycodone pill bottles and loose Methadone wafer pills in the center console. The officers also recovered a loaded .22 caliber revolver directly underneath the bag in the truck's center console.

On November 2, 2006, Fast was indicted and charged with trafficking in oxycontin and methadone in violation of 21 U.S.C. § 841(a)(1), carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), traveling in interstate commerce for purposes of drug trafficking in violation of 18 U.S.C. § 1952(a)(3), and two related forfeiture counts. At trial, Fast testified and admitted that he had intended to illegally sell his wife's prescription drugs. He also admitted that he had the gun which had been confiscated from his truck's center console with him

for his protection. The jury convicted Fast on all three substantive counts.

On July 31, 2007, Fast was sentenced to a total of 111 months of imprisonment. He timely appealed.

## II.

Fast first challenges the sufficiency of the evidence supporting his conviction for carrying a firearm during a drug trafficking crime under 18 U.S.C. § 924(c)(1). Under the familiar standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), we review a sufficiency of the evidence challenge to determine, viewing the trial testimony and exhibits in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008).

Section 924(c)(1) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime . . . be sentenced to a term of imprisonment of not less than 5 years . . . ." 18 U.S.C. § 924(c)(1)(A). In order to establish the connection between the carrying and the criminal activity, "'the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.'" *United States v. Walls*, 293 F.3d 959, 968 (6th Cir. 2002) (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)). "The weapon must at least facilitate or have the potential of facilitating the drug trafficking offense." *Id.*

It is clear that Fast "carried" the firearm within the meaning of § 924(c)(1) by keeping the revolver in the console of his vehicle. *Muscarello v. United States*, 524 U.S. 125, 126–27 (1998). There is also evidence sufficient to lead a rational trier of fact to conclude that the presence of the

3

firearm facilitated or had the potential to facilitate the drug trafficking offense. The firearm was discovered directly beneath the bag of narcotics that Fast admitted he attempted to sell to Detective Dishner. The firearm was loaded, within reach of Fast during the entire drug transaction, and Fast admitted at trial that he carried the firearm for his own protection. This evidence would fully support a rational juror's finding that Fast carried the weapon during and in relation to a drug trafficking crime.

Fast attempts to argue that there is no evidence that he "used" the firearm during the drug trafficking offense. This argument, of course, is inapposite as Fast was charged and convicted under the "carry" prong of § 924(c)(1).

### III.

Fast also challenges the admission of three pieces of evidence at trial. First, Fast argues that the district court erred in admitting into evidence the piece of paper allegedly containing handwritten notations regarding the drug transaction that Fast showed to Detective Dishner during the undercover drug buy. Second, Fast contends that the district court erred in admitting opinion evidence in the form of police officer testimony regarding the source and meaning of those handwritten notations. Finally, Fast challenges the admission of police officer testimony describing the officer's previous experience with drug trafficking and his views on whether there is a high likelihood that drug trafficking involves the use of firearms.

We need not consider Fast's various evidentiary challenges in detail because each of the purported errors was harmless. *United States v. Baldwin*, 418 F.3d 575, 581 (6th Cir. 2005) ("Even where a district court erroneously admits evidence, we will not reverse the defendant's conviction

if the error is deemed harmless."). "An error is harmless 'when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id*. at 582 (quoting *Mitchell v. Esparza*, 540 U.S. 12, 17–18 (2003)). Here, Fast took the stand at trial and admitted that he traveled across state lines and met Detective Dishner with the intent of selling illegal narcotics. He also admitted that he carried a firearm with him in his truck for his protection. The firearm was located directly underneath the stash of illegal narcotics in the vehicle's center console and within reach of Fast during the entire drug transaction. This evidence is overwhelming, and supports Fast's conviction on all three counts. We therefore conclude that the purported evidentiary errors challenged by Fast were harmless.

IV.

For the foregoing reasons, we affirm Fast's conviction.