**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0079n.06

Case No. 13-3743

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jan 29, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| WANDA LOVE, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE: CLAY and DONALD, Circuit Judges; MAYS, District Judge.[*]

**Bernice B. Donald, Circuit Judge.** A jury found Defendant-Appellant Wanda Love guilty on one count of conspiring to prepare false tax returns in violation of 18 U.S.C. § 371 (Count 1) and fifty-nine counts of aiding the preparation and filing of false tax returns in violation of 26 U.S.C. § 7206(2) (Counts 2–60) based on Love's conduct during the 2006, 2007, and 2008 tax seasons. The district court sentenced Love to fifteen months' imprisonment on each count, with all of the sentences to be served concurrently, followed by two years of supervised release for Count 1 and one year of supervised release for each of Counts 2-60, again to run concurrently. The district court also ordered Love to pay $134,149 in restitution and a $6,000 special assessment. Love appeals, arguing that the district court violated her Sixth

---

[*]The Honorable Samuel H. Mays, Jr., United States District Court for the Western District of Tennessee, sitting by designation.

Amendment right to confront witnesses against her by denying her motion to compel disclosure of her co-defendant's 2004 and 2005 tax returns. Additionally, Love argues that the government did not present sufficient evidence to prove her guilt beyond a reasonable doubt for five of her fifty-nine counts of aiding the preparation and filing of false tax returns and that these five convictions merit reversal. For the reasons stated below, we **AFFIRM** Love's convictions and sentence.

I.

Wanda Love worked as a tax preparer at a branch of the tax preparation company H&R Block, located in a Walmart in Toledo, Ohio. According to evidence adduced at trial, beginning in the 2006 tax season, Love generated extra money by having certain tax filers claim that they were self-employed, regardless of whether the filers actually worked, and taking a kickback from the refunds these filers subsequently received. As a part of this plan, Sonya Moses ("Moses")—Love's cousin, co-defendant, and eventually a cooperating witness for the government—began referring people, usually family and friends, to Love to participate in this plan. Although H&R Block had a policy that prohibited employees from personally receiving payments or gratuities for preparing tax returns, the participants in this scheme compensated Love directly for her assistance. Moses explained that she and Love split the money obtained from the people Moses recruited, and other participants testified that Moses had explained this fee-sharing arrangement to them.

As part of this scheme, Love would file false Schedule C self-employment income based on individuals' fabricated involvement in fictitious businesses in order to allow them to receive Earned Income Credit ("EIC") refunds. These "businesses" often included a version of the filers' names in their titles; typically purported to sell some combination of belts, hair

accessories, or purses; and tended to report identical sales numbers. A number of the tax filers assisted by Love admitted that they did not run any businesses and were not self-employed during the tax years in question. For example, while preparing Tephanie Moses's 2007 returns, Love knew Tephanie Moses did not have a business but nonetheless listed "Tephanie's Purses" on her Schedule C form. Similarly, Laura Simpson testified that she told Love she did not own a business but that Love and Moses told her to claim she owned "Laura's Belts and Purses."

Of the forty fraudulent returns that Love prepared in 2006 and 2007, none of them reported expenses or costs of goods for the businesses listed on their Schedule C forms. This absence is notable for two reasons. First, as Robert Miller, an IRS Revenue Agent, testified, "legitimate businesses have cost of goods sold or expenses." Second, according to Cynthia Kowalski—an H&R Block manager who taught several tax preparation training classes that Love had completed, including a course about EIC and preparing Schedule C forms—asking someone who sells purses or belts about expenses would have been a basic question for any tax preparer.

In 2008, the IRS made clear that it expected tax preparers like Love to exercise due diligence, which included questioning a business's gross receipts if they were not accompanied by expenses. In response, after not listing any business expenses on the tax returns that she prepared in 2006 and 2007, eighteen of the nineteen fraudulent returns prepared by Love in 2008 listed expenses and costs of goods. The same fraudulent filers for whom Love did not list any end-of-year inventory on December 31, 2007 in their 2007 returns suddenly had beginning-of-the-year inventory on January 1, 2008 in their 2008 returns. Agent Miller testified that this would be "impossible," and IRS Special Agent Jason Failing explained that a business's inventory value at the end of one year should match the starting inventory for the next year

Under the EIC program, refunds increase to a plateau at the maximum credit level before beginning to decrease as income increases. Of the false returns Love prepared for tax years 2006 to 2008, the vast majority—all fourteen of the returns from 2006, twenty-four of the twenty-six from 2007, and thirteen of the nineteen from 2008—received the maximum earned income credit. The evidence at trial indicated that Love offset higher gross receipt numbers for the 2008 filings she prepared by reporting cost of goods and expenses in order to lower the net profit on the returns and thereby maximize the EIC refund amount. In total, Love's customers for whom she prepared false returns fraudulently obtained $134,149 in refunds.

II.

On July 11, 2012, a grand jury returned a sixty-count indictment against Love and Moses, charging each of them with a single count of conspiring to prepare false tax returns in violation of 18 U.S.C. § 371 and charging Love with fifty-nine additional counts of aiding the preparation and filing of false tax returns in violation of 26 U.S.C. § 7206(2). On December 12, 2012, Love filed a motion to compel the government to disclose the 2004 and 2005 tax returns for Moses and others, claiming that without them she would not be able to cross-examine Moses effectively. The district court, however, denied this motion, both because the U.S. Attorney's Office did not possess the returns and because Love had not shown that the 2004 and 2005 returns were material to the charges concerning false tax returns for tax years 2006 through 2008. During her trial, Love renewed her request and again asserted that not having Moses's tax returns violated her right to meaningfully cross-examine witnesses against her as provided by the Sixth Amendment's Confrontation Clause.

After voir dire on February 11, 2013, the proof in Love's trial began on February 12. On February 14, 2013, at the close of the government's case-in-chief, Love moved for a judgment of

acquittal on all charges under Fed. R. Crim. P. 29. In particular, Love argued that the evidence was insufficient to support the five charges based on the returns Love filed for Veora Brown, Lashona Crossland, Annisa McIntoush, and Sabrina Williams because there had been no testimony regarding whether they actually owned businesses. The district court denied this Rule 29 motion. Love rested without presenting proof. Love did not renew her Rule 29 motion at the close of the evidence.

On February 15, the jury returned a verdict finding Love guilty on all sixty counts. On June 7, 2013, the district court sentenced Love to concurrent fifteen-month sentences on all of the counts, followed by two years of supervised release for Count 1 and one year of supervised release for Counts 2-60, again to run concurrently. The district court also ordered $134,149 in restitution and a mandatory $100 special assessment to be paid for each charge for a total of $6,000.

Love timely appealed. On appeal, she renews her argument that the district court violated her Sixth Amendment right to confront witnesses against her when it denied her motion to compel disclosure of Moses's 2004 and 2005 tax returns. Love also argues that the government did not present sufficient evidence to prove her guilt beyond a reasonable doubt for the aiding the preparation and filing of false tax returns charges relating to the returns she filed for Rochelle Arrington (Count 2), Veora Brown (Count 6), Lashona Crossland (Count 9), and Sabrina Williams (Counts 57 and 58).

III.

We turn first to Love's argument that not having access to Moses's 2004 and 2005 tax returns violated her constitutional right to confront witnesses against her. We generally review alleged violations of the Confrontation Clause de novo. *United States v. Henderson*, 626 F.3d

326, 333 (6th Cir. 2010). If, however, a claim is merely a discovery or evidentiary issue cloaked as a constitutional claim, we review it for abuse of discretion. *See, e.g.*, *United States v. Richards*, 659 F.3d 527, 549 (6th Cir. 2011).

The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).

"The Confrontation Clause of the Sixth Amendment guarantees a defendant an opportunity to impeach the credibility of a witness against him because impeachment is fundamental to effective cross-examination. . . . [H]owever, this does not mean that the defendant is free to impeach a witness 'in whatever way, [or] to whatever extent the defense might wish.'" *United States v. Holden*, 557 F.3d 698, 704 (6th Cir. 2009) (quoting *Van Arsdall*, 475 U.S. at 679) (internal citations omitted). The Confrontation Clause guards a defendant's ability to cross-examine a witness regarding bias, motive to testify, or partiality but does not "[confer] a right in every case to impeach the general credibility of a witness through cross-examination." *Boggs v. Collins*, 226 F.3d 728, 737 (6th Cir. 2000) (quoting *Davis*, 415 U.S. at 321 (Stewart, J., concurring)). "The key issue is whether the jury had enough information to assess the defense's theory of the case despite the limits placed on cross-examination." *Holden*, 557 F.3d at 704. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is

concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *accord United States v. Beverly*, 369 F.3d 516, 535 (6th Cir. 2004).

Love cross-examined Moses extensively. Love, however, argues that to have cross-examined Moses effectively, she needed access to Moses's 2004 and 2005 tax records to assess whether Love had prepared Moses's tax returns, as Moses asserted but Love denied, and whether Moses had claimed EIC on her 2004 or 2005 returns. Love argues that if the tax return information indicated that Love had not prepared Moses's tax returns and that Moses previously had filed for and received EIC, then she could use that information to discredit Moses and argue that Moses, rather than Love herself, had been the driving force behind the tax fraud scheme.

Both the record below and Love's own argument on appeal indicate that her right to confront and cross-examine Moses was not denied. Rather, Love is, in essence, challenging the district court's denial of her motion to compel and the limitations it placed on her cross-examination of Moses. Accordingly, we review Love's claim for abuse of discretion. *United States v. Gray*, 521 F.3d 514, 529 (6th Cir. 2008); *United States v. Obiukwu*, 17 F.3d 816, 821 (6th Cir. 1994) (per curiam). "A district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Schlaud v. Snyder*, 717 F.3d 451, 457 (6th Cir. 2013) (quoting *Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 351 (6th Cir. 2011)) (quotation marks omitted).

Tax return information is presumed confidential; 26 U.S.C. § 6103(a) prohibits its disclosure. Love contends that her constitutional rights trump this privacy interest but fails to

explain the relevance of Moses's 2004 and 2005 tax returns to her defense. Even assuming that the requested returns did indicate both that Love had not prepared Moses's taxes and that Moses had claimed EIC in 2004 and 2005, these facts would not excuse either Love's culpability as a participant in the tax fraud conspiracy or Love's preparing fraudulent tax returns for others during the 2006, 2007, and 2008 tax years. The requested returns—if they were available and favorable to Love—might have related to Moses's overall credibility regarding her testimony about how the tax fraud scheme began. Love, however, was not charged with aiding Moses's filing false tax returns, and such generalized impeachment would not demonstrate Moses's bias or motive to testify regarding Love's preparing tax returns listing fictitious Schedule C income for other people, as would be required to raise concerns about effective cross-examination based on the charges against her. *See Boggs*, 226 F.3d at 737.

Love had the chance to cross-examine Moses about her motive to testify during the Love's extensive questioning regarding Moses's cooperation agreement, her initial lies to the government, the inception of the scheme, and Love's preparing Moses's tax returns. Despite the limitations not having Moses's 2004 and 2005 tax returns potentially placed on Love's cross-examination of Moses, the jury could adequately assess Love's theory of her case. *See Holden*, 557 F.3d at 704. The district court did not abuse its discretion or impermissibly impede Love's right to confront and cross-examine Moses. Accordingly, Love's Confrontation Clause claim fails.

IV.

Love also argues that the government did not present sufficient evidence to prove beyond a reasonable doubt that she knew that the incomes reported in the returns for Rochelle Arrington, Veora Brown, Lashona Crossland, and Sabrina Williams were false and that the convictions for

the five counts of aiding in the filing false tax returns in violation of 26 U.S.C. § 7206(2) related to these returns should be vacated. The government, for its part, argues that all of these sufficiency challenges have been waived because Love did not mention Arrington in her Rule 29 motion and because Love failed to renew the motion at the close of all of the evidence.

Love's entire Rule 29 motion stated the following:

At this time, Your Honor, I would make a Rule 29 motion with respect to all the counts in the indictment. I will not argue all of the counts, but there are a few that I think are deserving of argument at this point. With respect to Veora Brown, Lashona Crossland, Annisa McIntoush, and Sabrina Williams, Your Honor, there has been no testimony regarding those four individuals and whether or not they had businesses. For that reason I think the government has failed to provide sufficient evidence upon which a jury could base a verdict of guilty. It's only with respect to those four, Your Honor, I would—that's the extent of my argument on the Rule 29 motion at this point.

"Although specificity in a Rule 29 motion is not required, where the defendant makes a Rule 29 motion on specific grounds, all grounds not specified in the motion are waived." *United States v. Chance*, 306 F.3d 356, 369 (6th Cir. 2002) (citing *United States v. Dandy*, 998 F.2d 1344, 1356-57 (6th Cir. 1993)); *accord United States v. Wesley*, 417 F.3d 612, 617-18 (6th Cir. 2005). The government contends that Love's Rule 29 motion pertained specifically to the charges relating to Brown, Crossland, McIntoush, and Williams and that all other grounds, including those related to Arrington, are waived. By initially stating that it was "with respect to all the counts in the indictment," Love's Rule 29 motion strongly suggests that she is making a general motion and then highlighting aspects of the general motion, rather than making a specific motion. The district court's response to Love's motion—"The Court denies the Rule 29 motion and finds there is sufficient evidence to sustain a conviction for the defendant on each of the counts offered by the government, including the counts just identified by [defense counsel]."—confirms that Love made a general Rule 29 motion, as the court addressed all of the charges, not just the ones

Love highlighted. Because Love entered a general Rule 29 motion, her failing to mention the charge relating to Arrington specifically did not waive this claim on appeal. *See Chance*, 306 F.3d at 371.

Love did, however, waive all of her sufficiency claims by failing to renew her Rule 29 motion for judgment of acquittal at the close of the evidence. "This Court will not consider challenges to the sufficiency of the evidence if the defendant failed to make a Rule 29 motion for judgment of acquittal at the end of the prosecution's case-in-chief and at the close of the evidence." *Id.* at 368 (citing *Dandy,* 998 F.2d at 1356). "Failure to make the required motions constitutes a waiver of objections to the sufficiency of the evidence." *Id.* at 369; *accord United States v. Kuehne*, 547 F.3d 667, 696-97 (6th Cir. 2008). Because Love did not renew her Rule 29 motion at the close of evidence, she has waived her sufficiency claims. We, therefore, review these claims for "manifest miscarriage of justice" and "only reverse a conviction if the record is devoid of evidence pointing to guilt." *Kuehne*, 547 F.3d at 697 (6th Cir. 2008) (quoting *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002)).

The record is not devoid of evidence pointing to Love's guilt with regard to Love's aiding in the preparation and filing of false tax returns for Arrington, Brown, Crossland, or Williams. To convict Love of violating 26 U.S.C. § 7206(2), the government had to prove beyond a reasonable doubt: (1) that Love aided, assisted, procured, counseled, advised or caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) that Love acted willfully. *United States v. Goosby*, 523 F.3d 632, 637 (6th Cir. 2008) (citing *United States v. Sassak,* 881 F.2d 276, 278 (6th Cir. 1989)).

The indictment alleged that Love aided in preparing false tax returns for fourteen people—including Veora Brown, Lashona Crossland, and Sabrina Williams—in tax year 2006

and twenty six people—among them Rochelle Arrington and Williams—in tax year 2007. The returns at issue share idiosyncratic features both among themselves and with the other fraudulent returns. Each of these returns listed a business that followed Love's standard naming scheme for a fictitious business by using a variation of the filer's first name and then purporting to sell belts, purses, or accessories: Veora's Belts and Purses (Brown); Shona's Handbags and Accessories (Crossland); Sabrina's Coach and Such (Williams); and Rochelle's Purses and Belts (Arrington).

Beyond the similarly styled names of their fictitious businesses, the returns for Arrington, Brown, Crossland, and Williams shared the distinctive feature of reporting mysteriously expense-free sales-based businesses that earned the maximum EIC. Special Agent Failing testified that all fourteen of the 2006 fraudulent returns and the vast majority of the 2007 fraudulent returns—including Arrington's and Williams's—reflected sales-based business descriptions that reached the maximum EIC but that did not have any expenses. As Agent Miller explained, "legitimate businesses have cost of goods sold or expenses," and a tax preparer has the duty to ask a person with a business selling belts and purses about associated expenses—a point echoed in the testimony of Kowalski, the H&R Block manager and trainer, who explained that these would be basic questions for a tax preparer. Agent Miller also called attention to the unusually repetitive instances of returns reporting gross receipts of $12,500 and $12,550 in the 2006 filings. Finally, Miller testified that, given their contents, one person's preparing all of 2006 and 2007 returns in question "would cause great concern for me."

Love "concedes that the returns [for Arrington, Brown, Crossland, and Williams] were similar to those of other tax filers who testified that Wanda Love knew they were not employed." In addition to the five returns for Arrington, Brown, Crossland, and Williams at issue on appeal, Love prepared thirty-five other similar returns for tax years 2006 and 2007 for allegedly self-

employed filers who primarily sold belts, accessories, or purses, all of whom operated without expenses and nearly all of whom earned the maximum EIC. Love nonetheless contends that these similarities are not sufficient to sustain her convictions related to Arrington, Brown, Crossland, and Williams. But circumstantial evidence can be sufficient to sustain a guilty verdict, and, as this Court explained in another 26 U.S.C. § 7206(2) case, "the similarity in the type of false deductions claimed on most of the tax returns is strong circumstantial evidence that the defendant willfully submitted tax returns containing false statements." *Goosby*, 523 F.3d at 637; *see also United States v. Stafford*, 721 F.3d 380, 392 (6th Cir. 2013) ("[C]ircumstantial evidence alone can sustain a guilty verdict and . . . [such] evidence need not remove every reasonable hypothesis except that of guilt." (quoting *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011))).

This evidence demonstrates that the record is not devoid of evidence pointing to Love's guilt. There has been no manifest miscarriage of justice, so we will not reverse these five convictions. *See Kuehne*, 547 F.3d at 697 (6th Cir. 2008).

V.

For the foregoing reasons, we **AFFIRM** Love's convictions and sentence.