RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 25-3108

PAUL CURRY,

*Defendant-Appellant*.

─────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:23-cr-00253-1—Dan A. Polster, District Judge.

Decided and Filed: March 23, 2026

Before: CLAY, GIBBONS, and HERMANDORFER, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:** Manuel B. Russ, Nashville, Tennessee, for Appellant. Segev Phillips, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────

## OPINION

─────────────

JULIA SMITH GIBBONS, Circuit Judge. Defendant-Appellant Paul Curry appeals his convictions and sentence arising out of his arrest on April 2, 2023. He argues that his convictions were not supported by sufficient evidence and that the prejudicial admission of jail calls he made before trial tainted his proceedings. He also challenges the reasonableness of his sentence. For the reasons discussed below, we affirm Curry's convictions and sentence.

# I.

## A. Arrest & Investigation

On April 2, 2023, officers for the Cleveland Police Department ("CPD") responded to a call requesting a welfare check of a person "passed out" behind the wheel of a running vehicle. DE 57, Trial Tr. Vol. 1, Page ID 375–77. Sergeant Robert Goines of the CPD arrived on scene, a parking lot located behind an apartment building, along with Officers Denzell Jones and Luis Galarza. As they approached the vehicle, a Dodge Durango, the officers observed appellant Paul Curry unconscious in the driver's seat. Officer Jones also spotted a gun (later identified as a Glock handgun) "in sight in the vehicle" with a large drum magazine connected to it. *Id.* at 380, 404, 434. Sergeant Goines then opened the passenger side door of the vehicle and moved the firearm, which was in the center console, to the floor of the passenger side. Once Sergeant Goines moved the firearm, the officers removed Curry from the car and placed him in the back of the police vehicle operated by Officer Jones and Officer Galarza that day.

At the same time Sergeant Goines moved the gun from the center console, he had also discovered underneath the gun a bag that contained suspected narcotics. He also located a digital scale in the center console of the vehicle, more sandwich "[b]aggies" filled with unidentifiable substances, and a box of empty sandwich bags. *See id.* at 383–85. Officers additionally found about $60 of U.S. currency in the car. Having removed Curry from the vehicle and discovered the firearm and suspected drugs, CPD officers effectuated a process tow of the Dodge to the police impound lot. Law enforcement recovered the following pieces of drug evidence from the car: (i) 0.71 grams of a controlled substance mixture including fentanyl, cocaine, and xylazine; (ii) 2.58 grams of cocaine hydrochloride; (iii) 1.90 grams of mushroom material containing psilocin and cocaine; (iv) 24.12 grams of cocaine; (v) 15.38 grams of methamphetamine; (vi) a scale containing cocaine and methamphetamine residue; (vii) a one-dollar bill containing 0.01 grams of cocaine; (viii) one bag of suspected marijuana (untested); and (ix) four bags of unknown pills, some of which tested positive for various controlled substances, including cocaine, fentanyl, and methamphetamine. The total amount of cocaine recovered was roughly one ounce. Police also found multiple cellphones in the vehicle.

Curry was later placed in an emergency medical services vehicle to be taken to the hospital.  Due to the discovery of suspected narcotics in the car and the state Curry appeared to be in, CPD officers believed that Curry may have been overdosing.  Law enforcement later determined that the vehicle and license plate were both registered to an individual named Francine Gill.

About a week after Curry's arrest, Investigator Eric Shelton was assigned to Curry's case to determine whether federal charges were warranted.  Shelton's investigation into Curry's case included reviewing two jail calls Curry made on April 10, 2023, following his arrest.  Both calls were made to a phone number registered to Francine Gill, the same person to whom the Dodge was registered.  In one call, Curry discussed over $10,000 he had on two Cash App cards found in "the car." Jail Call Recording 9_call 1 clip 800–912, 0:03–0:33.  In another, he mentions having "$50,000, $60,000" on Cash App cards.  Jail Call Recording 11_call 3 clip 730-840, 0:45–0:48.  And in another, Curry mentions paying tens of thousands of dollars towards the purchase of "the car" and the fact that "the car" has "almost $10,000 in it" after Gill asks Curry, "do you think we can get the car."  Jail Call Recording 18_Paul_Curry_Jail_call_1152–1238, 0:20–0:42.  After listening to the calls Investigator Shelton attempted to search the Dodge and locate the Cash App cards mentioned, but by that time the car had already been picked up from the police.

The grand jury ultimately indicted Curry on six counts.  Counts I–IV charged Curry with possession of a controlled substance with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c).  Count V charged Curry with using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  And Count VI charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

**B.  Trial**

Curry's trial took place from October 8–10, 2024.  On the second day of proceedings, the government requested that the trial court allow admission of excerpts from the jail calls made by Curry.  The prosecution argued that the clips were relevant because they offered proof of issues

raised during trial, "[p]articularly ownership of the vehicle." DE 58, Trial Tr. Vol. 2, Page ID 456. Defense counsel objected, arguing that the prosecution sought to admit the calls "in order to portray [Curry] . . . as having a significant enough amount of money that it's somehow suspicious." *Id.* at 457. The trial court concluded that the calls were relevant to the government's case to connect Curry to the vehicle and it overruled the defense's objection. The government subsequently played multiple clips of the calls for the jury during Investigator Shelton's testimony. In the clips, Curry could be heard referencing Cash App cards, shoes, and clothes found in "the car," the cost of "the car," and asking the person on the line (presumably Francine Gill) to go and get "the car." *Id.* at 493–94.

Shelton also testified that drug dealers often use sandwich bags to sell their products. He further stated that a person who is a drug user rather than a dealer typically has "just enough [money] to kind of purchase that one hit." *Id.* at 501. He asserted that a drug user is not usually found with large amounts of money, a scale, or weapons. On the other hand, Shelton testified that drug dealers typically use scales, maintain a larger drug stash with a variety of drugs, and sometimes use "cut," basically a substance meant to resemble the product, to "stretch[]" their supply. *Id.* at 504. Shelton also stated that in his time as investigator, he had noticed an increase in the use of Cash App for drug transactions.

In addition to Shelton's testimony, the government presented testimony from Sergeant Goines, Officer Jones, and Officer Galarza. Special Agent Jarrod Briggs, employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives, also testified regarding the interstate origin of the firearm located in the car. And Edgar Andrus, forensic scientist for the Cuyahoga County Regional Forensic Science Laboratory, testified regarding the testing of the substances found in the vehicle. After the government rested, defense counsel moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Counsel argued that there was insufficient evidence to prove that Curry intended to distribute the narcotics at issue (Counts I–IV) or to prove that he used the firearm at issue in furtherance of a drug trafficking crime (Count V). The court denied Curry's motion as to Counts I–IV, finding that sufficient evidence existed to prove that Curry possessed the narcotics at issue with the intent to distribute them. The court then concluded that the government's theory as to the firearm was that Curry *carried* the

weapon, rather than used it, in connection to a drug trafficking crime. And in evaluating that theory, the trial judge found that there was "ample evidence" that Curry carried the firearm and sufficient evidence to prove that he did so "to facilitate drug trafficking." *Id.* at 561–62. The defense rested without presenting proof. Curry did not renew his Rule 29 motion at the close of all evidence.

The jury ultimately found Curry guilty of the following charges in the indictment: (1) Count II, possession of cocaine with the intent to distribute; (2) Count V, use or carrying of a firearm during and in relation to a drug trafficking crime; and (3) Count VI, being a felon in possession of a firearm. The jury acquitted him on Counts I, III, and IV, his remaining charges for possession with intent to distribute relating to the other narcotics seized from the Dodge.

## C. Sentencing

The Presentencing Report ("PSR") calculated a Sentencing Guidelines range of 84 to 105 months' imprisonment on Counts II and VI, and a mandatory minimum of 60 months' imprisonment on Count V to run consecutively with any other term of imprisonment, resulting in a final Guidelines range of 144 to 165 months' imprisonment. The PSR based its Guidelines range calculation on Curry's offense level of 22 and his criminal history category of VI. Neither party objected to the PSR's calculation of Curry's Guidelines range.

Prior to his sentencing hearing, Curry filed a sentencing memorandum with the district court. In the memorandum, Curry requested that the court depart down from his Guidelines range due to his IQ score of 62 and diagnosis of major depressive disorder. Curry also asserted that his "myriad health challenges," including stage V chronic kidney disease and hypertension, warranted a downward departure. DE 47, Def. Sent. Mem., Page ID 324–26. Alternatively, Curry argued that a downward variance was also appropriate in his case because the "significant health challenges" that he faced while detained represented significant penalties for his crimes. *Id.* at 326–27.

The trial court held Curry's sentencing hearing on February 6, 2025. At the hearing, Curry renewed his request for a downward departure, and in the alternative requested a 144-month sentence on account of his physical and medical conditions. The government in turn

argued against imposing a downward departure and instead requested a within-Guidelines sentence based on Curry's extensive criminal history.  After referencing the sentencing factors listed in 18 U.S.C. § 3553(a), the district court sentenced Curry to 154 months' imprisonment to be followed by three years of supervised release.  The court further recommended a medical facility for Curry's incarceration as well as substance abuse and mental health aftercare.  Curry did not object.

Curry filed a timely appeal on February 19, 2025.

**II.**

Each issue Curry raises on appeal carries a specific standard of review.  Our court reviews de novo a challenge to the sufficiency of the evidence underlying a conviction.  *United States v. Driver*, 535 F.3d 424, 428 (6th Cir. 2008); *United States v. Burris*, 999 F.3d 973, 976 (6th Cir. 2021).  We analyze claims concerning the district court's admission or exclusion of evidence for abuse of discretion.  *United States v. Sadler*, 24 F.4th 515, 554 (6th Cir. 2022).  If we find that the district court erroneously admitted evidence, we analyze that ruling for harmless error to determine whether the conviction must be reversed.  *Id.*; *United States v. Churn*, 800 F.3d 768, 775 (6th Cir. 2015).  Finally, we also review for abuse of discretion a defendant's challenge to the reasonableness of the sentence.  *See United States v. Ruiz*, 777 F.3d 315, 319 (6th Cir. 2015).

**III.**

Curry raises multiple challenges to his convictions and sentence.  First, he argues that the government did not present sufficient evidence to support a guilty verdict on Count II or Count V.  Next, he asserts that his sentence is substantively unreasonable.  Finally, he challenges the district court's admission of clips taken from jail calls he made while incarcerated pre-trial.  We review his claims in their chronological order.

## A. Sufficiency of Evidence

Count II accused Curry of possessing cocaine with the intent to distribute it. Count V charged Curry with knowingly using or carrying a firearm during and in relation to a drug trafficking crime. The jury found Curry guilty on both counts.

Generally, when reviewing the sufficiency of the evidence, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jackson*, 918 F.3d 467, 478 (6th Cir. 2019) (alteration in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Circumstantial evidence alone is enough for the prosecution to satisfy its burden of proving its case. *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012). We will reverse a conviction "only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *United States v. Taylor*, 800 F.3d 701, 711 (6th Cir. 2015) (citation modified). All reasonable inferences must be made in the government's favor. *United States v. Cecil*, 615 F.3d 678, 691 (6th Cir. 2010); *see Jackson*, 918 F.3d at 478.

It is a well-established rule that a defendant does not properly preserve a challenge to the sufficiency of the evidence if he fails to make a Rule 29 motion for judgment of acquittal at the end of the prosecution's case-in-chief and at the close of evidence. *See United States v. Damra*, 621 F.3d 474, 494 (6th Cir. 2010). Thus, to avoid waiver, a defendant who unsuccessfully moves for acquittal at the close of the government's case and then proceeds to offer evidence of his own must renew his Rule 29 motion "at the close of *all* the evidence." *United States v. Williams*, 940 F.2d 176, 180 (6th Cir. 1991) (alteration in original); *United States v. Kuehne*, 547 F.3d 667, 697 (6th Cir. 2008). When a party waives its sufficiency claims, our review is limited to asking only whether there has been a "manifest miscarriage of justice." *Kuehne*, 547 F.3d at 697 (quoting *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002)). Under the manifest miscarriage of justice standard, we reverse a conviction only if the record is devoid of evidence showing guilt. *Id.*; *United States v. Mack*, 159 F.3d 208, 216 (6th Cir. 1998).

Here, Curry declined to present any evidence. Instead, the defense rested—and all evidence closed—immediately after the conclusion of the government's case-in-chief and the district court's denial of Curry's Rule 29 motion for a judgment of acquittal. Our previous decisions send conflicting signals regarding a defendant's obligation to renew a Rule 29 motion in such a scenario. In at least one unpublished decision, we deemed a sufficiency challenge waived when the defense failed to renew a Rule 29 objection after declining to present evidence. *See United States v. Love*, 553 F. App'x 548, 551, 553–54 (6th Cir. 2014).

However, we have also recognized that "[t]he traditional rule is that when the defendant moves for judgment of acquittal at the close of the government's case-in-chief, *and defense evidence is thereafter presented* but the defendant fails to renew the motion at the close of all of the evidence, he waives objection to the denial of his earlier motion." *United States v. Sherman*, 168 F.4th 417, 424 (6th Cir. 2026) (emphasis added) (citation modified). This same principle is faithfully followed by our sister circuits. *See, e.g.*, *United States v. Carpenter*, 162 F.4th 876, 881 (7th Cir. 2025) ("When [the defendant] rested his own case without presenting evidence, the close of the government's case became, as a practical matter, the 'close of evidence.'" (citation omitted)); *United States v. Daniels*, 723 F.3d 562, 569 (5th Cir.), *modified on reh'g in part*, 729 F.3d 496 (5th Cir. 2013) ("[The defendants] did not need to renew their Rule 29 motions in order to preserve their challenges because they did not present evidence."); *United States v. Wilson*, 240 F.3d 39, 43 (D.C. Cir. 2001) ("Because [the defendant] presented no evidence at all, his motion at the end of the government's case fully preserved his claim."). Accordingly, and without addressing how preservation rules might apply in distinct factual contexts, we hold that Curry did not waive his sufficiency claims by failing to immediately renew his Rule 29 motion after declining to present any defense evidence because the "close of all of the evidence" necessarily occurred once the government rested. *See Sherman*, 168 F.4th at 424 (citation omitted).

Ultimately, however, we find that the evidence presented by the government at trial was sufficient to convict Curry on Count II and Count V whether we apply the lenient manifest miscarriage of justice standard or the more exacting rational juror standard for properly

preserved claims. *See United States v. Kennedy*, 714 F.3d 951, 957–59 (6th Cir. 2013) (analyzing sufficiency of the evidence claim under both standards).

With respect to Count II, the parties dispute only whether the evidence presented proved that Curry had the requisite *intent* to distribute the cocaine recovered from the Dodge. Our circuit has long recognized that intent to distribute can be inferred solely from possession of a large quantity of drugs. *See United States v. Ham*, 628 F.3d 801, 808 (6th Cir. 2011). At Curry's trial, Edgar Andrus, who completed the lab testing of the drug evidence, confirmed that approximately one ounce, or 28 grams, of cocaine was found along with Curry in the vehicle. *See United States v. Haywood*, 280 F.3d 715, 723–24 (6th Cir. 2002) (finding 18 grams of crack cocaine sufficient to show intent to distribute). Thus, this one piece of evidence alone supports the jury's inference that Curry possessed the cocaine with the intent to distribute it.

However, further evidence bolsters the inference of Curry's intent. Sergeant Goines's testimony established that drug evidence—including a digital scale and sandwich bags—was found in the Dodge in addition to the firearm. *See United States v. Wilson*, 27 F.3d 1126, 1133 (6th Cir. 1994) (finding intent by recognizing connection between drug trafficking and firearms); *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006) (finding sufficient evidence of intent based on the quantity of drugs, manner of packaging in individual bags, the presence of weapons, and the presence of a scale). The district court also allowed clips of Curry's jail calls where he stated that he kept Cash App cards containing thousands of dollars in the vehicle and testimony from Shelton confirming that drug dealers now often use Cash App. *See United States v. Collier*, 246 F. App'x 321, 330 (6th Cir. 2007) (recognizing that large sums of cash found with drugs further supports intent to distribute); *United States v. Peters*, 15 F.3d 540, 544–45 (6th Cir. 1994) (same). Shelton also testified that drug users typically do not carry the amount of cocaine found in the Dodge and further stated that users often do not carry large sums of money, scales, or weapons, and that dealers typically package their drugs in sandwich bags. *See United States v. Brown*, 2000 WL 1290368, at *5 (6th Cir. Sept. 6, 2000) (per curiam) (upholding intent to distribute where officer testimony established that the defendant's practices were consistent with drug-dealing practices).

Turning to Count V, the government's theory was that Curry carried the firearm at issue during and in relation to a drug trafficking crime. To "carry" a firearm under § 924(c), "the firearm must be on the person or accompanying the person, as when a 'person . . . knowingly possesses and conveys firearms in a vehicle . . . .'" *United States v. Combs*, 369 F.3d 925, 932 (6th Cir. 2004) (quoting *Muscarello v. United States*, 524 U.S. 125, 126–27 (1998)). Here, Sergeant Goines's testimony established that a loaded firearm was found in the center console of the vehicle right next to Curry. The evidence therefore established that Curry "carried" the firearm. *See Kuehne*, 547 F.3d at 684 (a defendant "carries" a firearm when he "conveys or moves the firearm, including via a vehicle," and there is "some degree of possession" over the firearm (citation modified)); *United States v. Fast*, 375 F. App'x 573, 575–76 (6th Cir. 2010) (finding that the defendant "carried" a firearm by keeping it in the console of his vehicle).

To prove that the firearm was carried "during and in relation to" a drug trafficking crime, the weapon "must at least facilitate or have the potential of facilitating the drug trafficking offense." *United States v. Walls*, 293 F.3d 959, 968 (6th Cir. 2002). A firearm is not carried where its presence or involvement is the result of coincidence. *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999). Instead, "this element requires that the firearm furthered the purpose or effect of the crime." *Combs*, 369 F.3d at 933 (citation modified). In conducting this inquiry, we examine the totality of circumstances, and a conviction under § 924(c) will stand if the evidence is sufficient to support a finding that a defendant intended to have the firearm available for use during or immediately after the drug transaction. *See United States v. Brown*, 915 F.2d 219, 226 (6th Cir. 1990). We find sufficient evidence that Curry carried the firearm at issue "during and in relation to" the drug trafficking crime charged in Count II. 18 U.S.C. § 924(c)(1)(A).

Sergeant Goines's testimony established that a loaded firearm was found in the center console of the vehicle right next to Curry, and that drug evidence—including a digital scale—was found underneath the gun and throughout the vehicle. *See Fast*, 375 F. App'x at 575–76 (upholding finding of "during and in relation to" element under rational juror standard, in part, where the firearm was found beneath a bag of narcotics, the firearm was loaded, and the firearm was within reach of the defendant); *United States v. Blankenship*, 954 F.2d 1224, 1229 (6th Cir.

1992) (conviction under § 924(c) where the defendant "transported a measurable quantity of cocaine to his brother's house in a truck which contained a loaded firearm available for use"); *Hereford v. United States*, 1998 WL 415849, at *1 (6th Cir. June 16, 1998) (order) (upholding finding of "during and in relation to" element where officers found crack cocaine and the firearm on the floorboard of the driver's side of the vehicle).

Simply put, Curry's close proximity to the drugs and the loaded firearm, including the drum magazine for the firearm, lends sufficient evidence to support his conviction under § 924(c). *See United States v. Cherry*, 8 F. App'x 420, 421–22 (6th Cir. 2001) (per curiam) (firearm was carried "during and in relation to" drug trafficking crime under rational juror standard because the defendant's "close proximity to the drugs, the gun, the concealed holster, and the additional ammunition [was] sufficient circumstantial evidence"); *Nichols v. United States*, 1999 WL 253702, at *2 (6th Cir. Apr. 23, 1999) (per curiam) ("[A]n individual who knowingly carries a gun while engaged in illegal drug trafficking has carried that firearm 'during and in relation to' the predicate drug offense." (citation omitted)).

We cannot say that the record before us is devoid of evidence pointing to Curry's guilt on Count II and Count V. *See Kuehne*, 547 F.3d at 697 (quoting *Carnes*, 309 F.3d at 956); *Mack*, 159 F.3d at 216. Nor can we say that the evidence presented would fail to lead *any* rational trier of fact to conclude that Curry committed the crimes with which he was charged. *See Jackson*, 918 F.3d at 478 (quoting *Jackson v. Virginia*, 443 U.S. at 319). We therefore affirm his convictions on Count II and Count V based on the sufficiency of the evidence on which they rest.

## B. Admission of Jail Calls

We review the district court's admission of evidence on relevance grounds for abuse of discretion. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998); *see United States v. Newsom*, 452 F.3d 593, 601 (6th Cir. 2006). The district court abuses its discretion when its decision relies on the wrong legal standard, misapplies the correct standard, or rests on clearly erroneous facts. *See Sadler*, 24 F.4th at 554. "A clear error of judgment, which occurs where the position taken is without sound justification, also constitutes an abuse of discretion." *United States v. Gibbs*, 797 F.3d 416, 422 (6th Cir. 2015). The trial court enjoys broad

discretion when determining questions of admissibility, so "an evidentiary ruling is not to be lightly overturned." *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 510 (6th Cir. 2013). We must be "firmly convinced that a mistake has been made." *Morales*, 151 F.3d at 516.

Curry argues that the district court erred by admitting recordings of his jail calls because the money that Curry discussed on the calls was not connected to the case or the evidence against him. In response, and mirroring the arguments presented to the trial court when moving to admit the calls, the government advances two theories of relevance: (1) the calls show Curry's control of the vehicle, and (2) the calls are evidence of unexplained wealth, which may be circumstantial evidence of drug trafficking. We agree with the government that the calls were relevant to showing Curry's control of the vehicle and were therefore admissible.

Federal Rule of Evidence 401 defines relevant evidence as evidence having "*any* tendency to make a fact more or less probable than it would be without the evidence," where that fact is "of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). Even if evidence is deemed relevant, however, Federal Rule of Evidence 403 allows the trial court to exclude it if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *United States v. Ford*, 761 F.3d 641, 648 (6th Cir. 2014). We may not overturn the trial court's balancing of Rule 401 and Rule 403 unless the court's ruling caused more than harmless error. *See Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004).

Curry's control of the vehicle is a fact of consequence here because it connects him to the firearm and drugs found within it, both of which are bases for the convictions he appeals in this case. The jury heard that the calls were made to a phone number registered to Francine Gill, the same person to whom the vehicle was registered. In one clip, the jury heard Curry discussing over $10,000 he had on two Cash App cards found in "the car." Jail Call Recording 9_call 1 clip 800-912, 0:03–0:33. And in another, Curry mentions paying tens of thousands of dollars towards the purchase of "the car" and the fact that "the car" has "almost $10,000 in it" after Gill asks Curry, "do you think we can get the car." Jail Call Recording 18_Paul_Curry_Jail_call_1152-1238, 0:20–0:42. From this evidence, the jury could infer that

"the car" that Curry and Gill discussed was the same Dodge Durango at the center of Curry's charges, making it more probable that Curry had control over the vehicle despite the fact that it was registered to Gill. This is a fact of consequence given that the prosecution needed to link Curry to the evidence found in the vehicle in order to successfully convict him on Counts II and V.

As for potential prejudice posed by the admission of the calls, Curry's sole argument is that the calls prejudiced him because they "permitted the Government to insinuate that there was other, greater illegal activity than they had any ability to prove." CA6 R. 15, Appellant Br., at 34. We disagree. At trial, the prosecution stated that it wanted to admit the calls to show Curry's control over the vehicle, and that was exactly the focus of its introduction of the calls. Beyond ownership of the car, the government's admission of the calls also clearly attempted to prove that Curry possessed large amounts of money in the form of Cash App cards in the vehicle, in addition to the firearm and drugs located by police. And as previously discussed, large sums of money found with a firearm and drugs may serve as further evidence that Curry possessed the cocaine charged in Count II with the intent to distribute it. *See Collier*, 246 F. App'x at 330 (recognizing that large sums of cash found with drugs further supports intent to distribute); *Peters*, 15 F.3d at 544–45 (same). Accordingly, we cannot agree with Curry's theory of prejudice, and we find no other grounds for holding that the district court's admission of the jail calls prejudiced him in violation of Rule 403. The district court therefore did not err in admitting the calls.

## C. Reasonableness of Curry's Sentence

The "essence" of a claim that a sentence is substantively unreasonable "is whether the length of the sentence is greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010) (citation modified). This inquiry asks us to determine whether the district court properly weighed the § 3553(a) factors such that it did not place too much weight on some, and too little on others. *See United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). At bottom, a defendant's claim that a sentence is substantively unreasonable is a claim that the sentence is too long. *United States v. Haile*, 157 F.4th 820, 832 (6th Cir. 2025). Although Curry did not object

to his sentence when prompted by the district court, his lack of objection does not harm his reasonableness claim on appeal. *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc) ("A litigant has no duty to object to the 'reasonableness' of the length of a sentence (or to the presumption of reasonableness) *during* a sentencing hearing, just a duty to explain the grounds for leniency." (alteration in original)). Curry asserts that his sentence is substantively unreasonable because "it ignored the significant mental and physical health that [Curry] demonstrated." CA6 R. 15, Appellant Br., at 29. We disagree.

At sentencing, the district court heard argument from defense counsel requesting that Curry receive a downward departure based entirely on Curry's physical and mental health conditions. The judge also confirmed that he reviewed Curry's sentencing memorandum and his PSR, both of which discuss Curry's health at length. With all this information under consideration, the court went on to confirm that the "touchstone for sentencing" is the § 3553(a) factors and found that four factors in particular—punishment, deterrence, protecting the public, and rehabilitation—all counseled in favor of a sentence of 154 months' imprisonment. DE 60, Tr. Sent. Hr'g., Page ID 626–27. The record does not show that the district court ignored Curry's health; it simply determined that other sentencing factors carried more weight, as it was entitled to do. *See United States v. Hawkins*, 165 F.4th 442, 458 (6th Cir. 2026) ("We have recognized that one or two factors often prevail while others pale."). It should be noted that the district court recommended that Curry be incarcerated at a medical facility and receive substance abuse and mental health aftercare.

Moreover, 154 months is in the middle of Curry's Guidelines range of 144 to 165 months' imprisonment, granting Curry's sentence a rebuttable presumption of substantive reasonableness under our review. *See United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009) (confirming that sentences imposed within the properly calculated Guidelines range carry a rebuttable presumption of substantiative reasonableness). We see nothing on the record before us to rebut the presumption that Curry's within-Guidelines sentence was substantively reasonable. There is no indication that the district judge improperly assigned too much weight to some § 3553(a) factors and too little to others. *See Rayyan*, 885 F.3d at 442. Instead, the record shows that the court considered the information presented concerning Curry's physical and

mental health conditions yet ultimately concluded that "a sentence within the advisory range is sufficient but not greater than necessary." DE 60, Tr. Sent. Hr'g., Page ID 626. As a result, Curry's substantive reasonableness claim fails.

It is for these same reasons that we affirm the district court's refusal to grant Curry a downward variance. Curry argues that the denial constituted abuse of discretion because the court "should have recognized the need for [Curry] to receive 'medical care or other correctional treatment' that was far from the 'mine run' case." CA6 R. 15, Appellant Br., at 33. However, as this opinion has noted, the district court in fact recognized Curry's need to receive medical care and fashioned its sentencing recommendations accordingly.

Finally, we reject Curry's argument challenging the district court's denial of a downward departure in his case. Our circuit has long recognized that a district court's denial of a downward departure is unreviewable on appeal "unless the lower court incorrectly believed that it lacked the authority to grant such a departure." *See United States v. Matthews*, 155 F.4th 845, 854 (6th Cir. 2025) (citation modified); *United States v. Madden*, 515 F.3d 601, 610 (6th Cir. 2008). There is no evidence here suggesting that the district court believed it lacked the authority to grant a departure. The court confirmed that it reviewed Curry's sentencing memorandum, which argued for a downward departure, and heard argument at sentencing in favor of granting the departure. It simply chose not to do so. This issue is therefore unreviewable on appeal. *See Hawkins*, 165 F.4th at 457 n.4 (refusal to review district court's denial of a downward departure because "[n]othing in [the] record suggests the district court incorrectly believed it lacked authority to grant a downward departure").

## IV.

For the foregoing reasons, we affirm the district court's entry of Curry's convictions and sentence.